[Civ. No. 61577. Second Dist., Div. Two. Jan. 14, 1982.]

EVELYN M. FIERRO, a Minor, etc., et al., Plaintiffs and Appellants, v. INTERNATIONAL HARVESTER COMPANY, Defendant and Respondent.

**COUNSEL**

Jones & Wilson and Robert L. Wilson for Plaintiffs and Appellants.

Millard, Stack & Stevens, L. Raymond Millard, Howard A. Kapp and Marie Polizzi Holweger for Defendant and Respondent.

**OPINION**

**COMPTON, J.**—Appeal by plaintiffs in a wrongful death action from a judgment in favor of defendant. We affirm.

International Harvester Company (International) builds, among other things, a vehicle known as the 1600 series Loadstar truck consisting of only an engine, cab and chassis. These skeleton vehicles are sold to commercial users who install a body or other additions according to their particular needs.

In 1969, International sold one of these units to Luer Packing Company (Luer). At the time of delivery the unit was equipped with three fuel tanks—one located under the cab and two auxiliary tanks located on either side of the unit, exterior of the cab.

Luer installed a Thermo-King refrigerator unit on the chassis, thus creating a completed refrigerator truck for the handling of meat products. It is undisputed that International had no involvement with the design, acquisition or installation of the Thermo-King unit. International simply contemplated that the unit would be modified in some fashion to make it commercially functional. The unit was not designed to, nor was it anticipated that it would be, operated in its unaltered configuration.

Some five years later, while in the course and scope of his employment with Luer, the decedent was driving the refrigerated truck in question along State Highway 163 in San Diego County at about 60-70 miles an hour. A tire blew out. The truck hit a guard rail, skidded along for a distance and turned over. Gasoline spilled from the damaged tanks and the ensuing fire resulted in the death of the decedent.

Plaintiffs, which include Luer's worker's compensation insurance carrier, in the instant action seek to impose liability on International for negligence and manufacturer's strict liability. The complaint alleged, in general terms, International's delict in manufacturing and designing the truck. The evidence, however, focused on the location of the fuel tank and filler necks and their exposure to damage when the truck struck the guard rail and turned over. While conceding that the evidence supports the judgment, plaintiffs claim error in the giving and refusing of certain jury instructions.

Partway through the trial, during the plaintiffs' cross-examination of one of International's witnesses, plaintiffs for the first time suggested that International had a duty to warn Luer that attaching a power cable from the Thermo-King unit to the truck's battery might create a fire hazard. There was the further suggestion that International had a duty to warn Luer that the body which it installed on the chassis should be designed to protect the necks of the fuel tanks from impact. The trial court refused to give BAJI No. 9.20,[1] an instruction proffered by the plaintiffs dealing with the issue of a failure to warn. We treat this latter issue first.

■ Since the issue of failure to warn was never pleaded and plaintiffs offered no evidence on the subject, we conclude that the issue was never properly raised and that no instruction thereon was warranted. In any event, there was nothing about the International unit which required any warning to Luer. A sophisticated organization like Luer does not have to be told that gasoline is volatile and that sparks from an electrical connection or friction can cause ignition. (*Kaiser Steel Corp.* v. *Westinghouse Elec. Corp.* (1976) 55 Cal.App.3d 737, at p. 748 [127 Cal.Rptr. 838].)

There was no evidence that any feature of the skeleton unit was unique or contained any component or capability which was known to International and which was not known to or readily observable by Luer. The fuel tanks and the filler spouts were patently exposed, and they were obviously designed to hold gasoline. The properties and propensities of that volatile liquid are a matter of common knowledge. Nor did Luer need to be advised of the necessity to cover and protect the exposed fuel tanks before operating the unit under circumstances which could subject them to damage.

In short, the absence of a warning to Luer did not substantially or unreasonably increase any danger that may have existed in using the International unit (*Canifax* v. *Hercules Powder Co.* (1965) 237 Cal.

[1]BAJI No. 9.20 states: "One who supplies a product [directly or through a third person,] for another to use, which the supplier knows or has reason to know is dangerous or is likely to be dangerous for the use for which it is supplied, has a duty to use reasonable care to give warning of the dangerous condition of the product or of facts which make it likely to be dangerous to those whom he should expect to use the product or be endangered by its probable use, if the supplier has reason to believe that they will not realize its dangerous condition. A failure to fulfill that duty is negligence. ¶ This rule applies to a ＿＿＿＿＿＿＿ of a product."
(type of supplier)

App.2d 44 [46 Cal.Rptr. 552]; *Dosier* v. *Wilcox-Crittendon Co.* (1975) 45 Cal.App.3d 74 [119 Cal.Rptr. 135]) and Luer's failure to guard against those eventualities did not render the International unit defective. (*Garman* v. *American Clipper Corp.* (1981) 117 Cal.App.3d 634 [173 Cal.Rptr. 20].)

 Plaintiffs' principal contention on appeal is that the trial court erroneously refused to instruct the jury on the basis of instructions proffered by the plaintiffs as to the duty of International to design a crashworthy vehicle.

There is no question but that the trial court gave instructions which completely and correctly embraced the principles enunciated in *Barker* v. *Lull Engineering Co.* (1978) 20 Cal.3d 413 [143 Cal.Rptr. 225, 573 P.2d 443].[2] In addition, the trial court gave an instruction submitted by defendant to the effect that the manufacturer of a motor vehicle must "take accidents into consideration as a reasonably foreseeable occurrence involving their product."

Plaintiffs' instructions, which were rejected by the trial court, purportedly were based on this court's opinion in *Self* v. *General Motors Corp.* (1974) 42 Cal.App.3d 1 [116 Cal.Rptr. 575], and in essence would have told the jury (1) that International in designing its unit was *required* to foresee a high-speed accident with subsequent overturning, and (2) that International had a duty to so design its unit as to minimize unreasonable risks of injury or death from such an event.

The instructions proffered by plaintiffs here attest to the validity of the observations in a number of Court of Appeal opinions that direct quotations of selected language from appellate opinions rarely produce satisfactory jury instructions. (*Sand* v. *Mahnan* (1967) 248 Cal.App.2d

---

[2]BAJI No. 9.00.5 states: "The [manufacturer] of a product is liable for injuries a proximate cause of which was a defect in its design which existed when it left possession of defendant provided that the injury resulted from a use of the product that was reasonably foreseeable by the defendant. [¶] A product is defective in design [unless the benefits of the design of the product as a whole outweigh the risk of danger inherent in the design] [or] if the product failed to perform as safely as an ordinary consumer of the product would expect when used in a manner reasonably foreseeable by the defendant[s]. [¶] In determining whether the benefits of the design outweigh such risks you may consider, among other things, the gravity of the danger posed by the design, the likelihood that such danger would cause damage, the mechanical feasibility of a safer alternative design at the time of manufacture, the financial cost of an improved design, and the adverse consequences to the product and the consumer that would result from an alternative design."

679 [56 Cal.Rptr. 691]; *Merlo v. Standard Life & Acc. Ins. Co.* (1976) 59 Cal.App.3d 5 [130 Cal.Rptr. 416]; *Bell v. Seatrain Lines, Inc.* (1974) 40 Cal.App.3d 16 [115 Cal.Rptr. 76].)

In *Self* v. *General Motors Corp., supra*, this court's opinion was essentially directed to the element of causation and the weighing of design decisions. The language seized upon by plaintiffs concerning the foreseeability of high-speed collisions and the duty to mitigate the seriousness of particular crash related injuries was simply this court's paraphrasing of what we understood to be the existing law that some degree of abuse or misuse of a product is to be anticipated. Our opinion was not designed to set the parameters of foreseeability or absolutely fix for all cases specifically foreseeable events. Those remain matters of fact to be determined in each case.

In the case at bench International contended that under the circumstances of this particular accident, the fire would have resulted no matter where the fuel tanks were located, thus creating a factual issue concerning causation as in *Self.*

The language in *Self*, which plaintiffs seek to turn into a principle of law upon which a jury must be instructed in automobile design cases, was dicta and if used in this case would have compelled a verdict for plaintiffs on the keenly contested factual issues of the foreseeability of the circumstances of this particular accident and the resultant causation for failure to design for such accident.

In summary, the plaintiffs' instructions purported to tell the jury that International was guilty of defectively designing its truck because the accident which produced the injury was the very type of accident which International had a duty to anticipate and design to prevent, without considering the weighing process which *Self* and *Barker v. Lull Engineering Co., supra*, 20 Cal.3d 413, mandate.

Additionally, this case involves a fact not present in *Self*, to wit, that International's unit was designed with the specific intent that it would be modified and augmented by Luer in a fashion entirely beyond International's control. *Self* dealt with a completed vehicle totally designed by the defendant manufacturer.

There was no claim here that any part of International's unit was defectively *manufactured.* Nor was there any evidence that the unit was

defectively designed for the use intended, i.e., to be used as a component part of a truck to be fabricated by Luer. It appears to us that in the final analysis, Luer's failure, if any, to design the truck which *it* ultimately placed on the road, in such a fashion as to minimize the danger of damage to the fuel tank and the resultant fire, was *the cause* of the injury and superseded any causative factor involving International's conduct.

In concept, this case is analogous if not identical to *Wiler* v. *Firestone Tire & Rubber Co.* (1979) 95 Cal.App.3d 621 [157 Cal.Rptr. 248]. There the Court of Appeal affirmed a summary judgment in favor of a tire manufacturer in an action for wrongful death in a vehicle crash following a tire failure. The evidence disclosed that Firestone manufactured the tire free of defects and sold it to Ford Motor Company. Ford in turn manufactured and attached a valve stem—the apparent villain in decedent's accident.

The court there held that Firestone could reasonably expect that Ford would take appropriate measures to insure proper design and installation of the valve stem.

Here International could reasonably expect that Luer would take appropriate measures to insure proper design to cover and protect the fuel tanks. (See Prosser, *Strict Liability to the Consumer in California* (1966) 18 Hastings L.J. 9.)

■ In a civil case a court has no duty to instruct, *sua sponte*, on any issue. (*Montez* v. *Ford Motor Co.* (1980) 101 Cal.App.3d 315 [161 Cal.Rptr. 578]; *Willden* v. *Washington Nat. Ins. Co.* (1976) 18 Cal.3d 631 [135 Cal.Rptr. 69, 557 P.2d 501].) Nor does the court have any duty to modify or correct instructions proffered by a party. (*Hyatt* v. *Sierra Boat Co.* (1978) 79 Cal.App.3d 325 [145 Cal.Rptr. 47].)

■ While a litigant has a right to have the jury *properly* instructed on its theory of the case (*Self* v. *General Motors Corp., supra*, 42 Cal.App.3d 1) the instructions proffered on that theory must accurately state the law and must not be argumentative in overemphasizing or stressing selective items of evidence. (*Slayton* v. *Wright* (1969) 271 Cal.App.2d 219 [76 Cal.Rptr. 494].)

■ Since plaintiffs' offered instructions attempted to impose a duty on International to foresee the very accident which occurred, ignored

the weighing concept of *Barker* v. *Lull Engineering Co., supra*, 20 Cal. 3d 413, failed totally to deal with the role of Luer in the chain of production and in effect attempted to fix liability totally on International, they were properly rejected. The instructions that were given were in fact more favorable to plaintiffs than required under the circumstances.

The judgment is affirmed.

Roth, P. J., and Beach, J., concurred.