**In the Matter of JOHNS–MAN-VILLE/ASBESTOSIS CASES.**

**No. 77 C 3534.**

United States District Court,
N. D. Illinois, E. D.

March 22, 1982.

John C. Bulger, Cooney & Stenn, Chicago, Ill., for plaintiffs.

Daniel P. Socha, Michael D. Freeborn, Rooks, Pitts, Fullagar & Poust, Chicago, Ill., for defendant Johns-Manville.

James W. Ozog, Clausen, Miller, Gorman, Caffrey & Witous, P. C., Chicago, Ill., for defendant Hooker Chemicals & Plastics Corp.

Clarold L. Britton, Patrick J. Phillips, Jenner & Block, Chicago, Ill., for defendant Asbestos Corp., Ltd.

Richard R. Ryan, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., for defendants Bell Asbestos Mines, Ltd., and Advocate Mines, Ltd.

Daniel S. Hefter, Isham, Lincoln & Beale, Chicago, Ill., for defendant Brinco Min. Ltd.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Dr. Kenneth W. Smith ("Dr. Smith") was hired in 1944 as a Canadian Johns-Manville Company, Ltd. ("Canadian J–M") plant physician and eventually served as Medical Director for Johns-Manville Corporation ("J–M") from 1952 to 1966. Dr. Smith died in July 1977.

Dr. Smith was deposed in two earlier asbestos-related cases: *Louisville Trust Co. v. Johns-Manville Corp.*, No. 164922 (Jefferson Cty., Ky.Cir.Ct.1972) (the "*Louisville Trust* deposition," taken April 21, 1976, cited "L. Dep.—") and *DeRocco v. Forty-Eight Insulations, Inc.*, Nos. 2880, 2881 (Allegheny Cty., Pa.Ct. of Common Pleas 1974) (the "*DeRocco* deposition," taken January 13, 1976, cited "D. Dep.—"). Plaintiffs have moved to permit use of the *Louisville Trust* deposition[1] at trial in these consolidated actions. J–M, Johns-Manville Sales Corporation ("J–M Sales") and Canadian J–M[2] have filed a cross-motion *in limine* seeking to exclude use of both the *Louisville Trust* and *DeRocco* depositions.[3] For the reasons stated in this memorandum opinion and order plaintiffs' motion is granted and J–M Defendants' motion is denied.

*Fed.R.Evid.P. ("Rule") 804(b)(1)*

Rule 804(b)(1) provides:

(b) *Hearsay exceptions.* The following are not excluded by the hearsay rule if declarant is unavailable as a witness:

(1) *Former testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

---

1. Plaintiffs' reply memorandum indicates they may now seek to introduce *both* depositions.

2. J–M, J–M Sales and Canadian J–M will be referred to collectively as "J–M Defendants." Plaintiffs seek to introduce Dr. Smith's testimony only against J–M Defendants.

3. Though admission of the depositions is not sought against them, several other defendants also oppose plaintiffs' motion on grounds dealt with later in this opinion.

Because of Dr. Smith's death his testimony is admissible if it satisfies the requirements of Rule 804(b)(1).[4]

### "Compliance with Law"

■ J–M Defendants say neither deposition was "taken in compliance with law" because they were not signed by Dr. Smith.[5] That technical argument is without merit as to each deposition:

(1) At the end of the *Louisville Trust* deposition the court reporter stated, "No request was made by counsel for any party that the deposition be submitted to the witness for reading and signature." Indeed the Ontario law (where the deposition was taken) did not require signature by the witness.

(2) In *DeRocco* Dr. Smith submitted a signed list of corrections to the deposition on his own letterhead. That constituted effective compliance with the controlling Pennsylvania law requirement of deposition signature by the witness (the deposition also contained the other legal assurances of authenticity: the court reporter's statement and certificate).

This Court agrees fully with the thoughtful discussion in *Adkins v. Combustion Engineering, Inc.*, No. 77–3032, slip op. at 4–7 (S.D.W.Va. Jan. 5, 1981), rejecting the same contention as to each deposition.

### Relationship of the Parties

■ Rule 804(b)(1) also requires that the party against whom a deposition is offered, or that party's "predecessor in interest," have been a party in the earlier proceeding.[6] Johns-Manville Products Corporation ("J–M Products") was a defendant in both *Louisville Trust* and *DeRocco*, while none of J–M Defendants was. Nonetheless this Court finds the "predecessor in interest" condition satisfied.

First, as to J–M Sales plaintiffs' R. Mem. 7 asserts:

The Johns-Manville Waukegan Plant at which plaintiffs were employed was previously under the name of Johns-Manville Products Corporation and is now under the name of Johns-Manville Sales Corporation. . . .

It is unclear whether that statement denotes the same corporate entity with a name change or a transfer of assets between two J–M subsidiaries. In either event even the strictest reading of the "predecessor" language is met.

Even were that not the case, the relationships among the J–M Defendants compel the same result as to each. As the December 2, 1977 affidavit of J–M's Vice President, Secretary and General Counsel in these actions explains:

(1) J–M is the publicly-owned parent corporation.

(2) All the other entities (other J–M Defendants and J–M Products) are its wholly-owned subsidiaries.

(3) There are interlocking officers, uniformity of employee benefit programs, centralization of all major staff functions,[7] common "Johns-Manville" advertising and a total general integration among all the corporations.

Any such authentication question will readily be disposed of before trial.

---

4. In a sense all of the subparagraphs of Rules 803 and 804 are particularized applications of the philosophy expressed by the "other exceptions" provisions of Rules 803(24) and 804(b)(5), under which the most important factor is the hearsay statement's "circumstantial guarantees of trustworthiness." Where this opinion deals with the concepts both explicit and (because undefined) implicit in Rule 804(b)(1), it draws on that same philosophy.

5. J–M Defendants also say plaintiffs have not filed certified copies of the deposition with this Court. Of course the nature of plaintiffs' filing *here* is irrelevant to the issue whether the depositions were "taken in compliance with law."

6. J–M Defendants read the Rule backwards in arguing that "predecessor in interest" refers to the party in the *current* proceeding. *See*, 4 Weinstein's Evidence ("*Weinstein*") ¶ 804(b)(1)[04], at 804–67.

7. Such centralization includes all legal functions. J–M was represented at the Dr. Smith depositions by Lively Wilson and Dennis Markussen, both of whom continue to represent all J–M Defendants.

(4) Ultimate responsibility for all management decisions rests with J–M and its corporate officers.

In summary the affidavit puts it: "That in a defacto and operations sense there is but one integrated entity, to wit: 'Johns-Manville.'"

That centralization and integration extended to Dr. Smith himself as the only full-time physician in the whole J–M corporate structure. Dr. Smith said (D. Dep. 38–39) he acted "as sort of an ad hoc consultant to the total corporation...."

How does such a close-knit corporate family fare in "predecessor in interest" terms? As originally proposed by the Supreme Court Rule 804(b)(1) would have permitted use of prior testimony whenever *any* party with a similar motive or interest had an opportunity to examine the witness in the earlier proceeding. However the House Judiciary Committee rejected that innovation and proposed the language eventually adopted because:

> it is generally unfair to impose upon the party against whom the hearsay evidence is being offered responsibility for the manner in which the witness was previously handled by another party....

In accepting the House amendment, the Senate noted "that the difference between the two versions is not great." *See*, 4 *Weinstein* ¶ 804(b)(1)[04], at 804–67.

Based on that legislative history the Third Circuit has given an expansive reading to "predecessor in interest." In *Lloyd v. American Export Lines, Inc.*, 580 F.2d 1179, 1185–87 (3d Cir. 1978) that Court required only that the parties to the earlier and later actions have a "sufficient community of interest" or a "like motive" for cross-examination. That approach would clearly permit use of the Smith depositions against all J–M Defendants. *See, Standard Oil Co. v. Montedison, S.p.A.*, 494 F.Supp. 370, 421 n.462 (D.Del.1980).

■ It is unnecessary to endorse that broad an application of Rule 804(b)(1) to embrace all the J–M Defendants here. Congress certainly did not intend to use "predecessor in interest" in the strict sense of corporate privity. Given the policies underlying the hearsay concept, it is eminently fair to admit testimony, cross-examined by J–M's lawyers on behalf of one J–M subsidiary, against all J–M Defendants.

It is true that this Court has held the J–M corporations separate legal entities in a worker's compensation context. *In re Johns-Manville/Asbestosis Cases*, 511 F.Supp. 1229, 1234 (N.D.Ill.1981). But the considerations there were very different from those now at issue, those with which the Supreme Court and Congress were concerned in drafting the Rule 804(b)(1) hearsay exception.[8] All Johns-Manville entities, though not a single party, are successors in interest to J–M Products for purposes of the Dr. Smith depositions.

### *"Similar Motive"*

J–M Defendants urge that J–M Products lacked motive in *Louisville Trust* and *De-Rocco* to develop testimony on issues relevant to these consolidated actions. Specifically they point out that those cases were brought by end users of asbestos, while these involve employees. Both the depositions, they argue, involved the issue whether a warning label was appropriate on asbestos products. J–M Defendants thus assertedly lacked the motive to explore issues such as warnings given to employees.

But the depositions were much broader than J–M Defendants would have it. Thus the *Louisville Trust* deposition involved a wide variety of issues including:

(1) conditions at Johns-Manville milling and mining facilities (L. Dep. 23);

(2) the various diseases occurring in J–M employees (L. Dep. 20–21);

---

8. On that score the policy considerations are akin to those supporting the law of issue preclusion:

> A person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party.

Restatement (Second) of Judgments § 83 (Tent. Draft No. 2).

(3) worker's compensation problems (L. Dep. 25);

(4) reports to J–M executives on the dangers of asbestos (L. Dep. 30, 38);

(5) possible use of warning labels (L. Dep. 53–64).

And the *DeRocco* deposition involved among other things:

(1) a review of Dr. Smith's publications (D. Dep. 10–12);

(2) a review of studies done on asbestos-related diseases (D. Dep. 14–15);

(3) treatment of asbestos-related diseases (D. Dep. 22–25);

(4) dust control at mines and mills (D. Dep. 26);

(5) corporate officers' knowledge of the medical hazards of asbestos (D. Dep. 40);

(6) talks with the legal department on asbestos-related problems (D. Dep. 50).

To a substantial extent plaintiffs' focus in the depositions was the same as that of the current plaintiffs. They were exploring the degree of J–M's awareness of various aspects of asbestos-related diseases from the 1940s through the 1960s. Warnings of the hazards (including warning labels) were only part of the many issues touched on during the depositions.

As to at least two currently critical issues—knowledge of J–M's corporate officers and knowledge of J–M's only medical officer Dr. Smith—J–M Products had full motive and opportunity to cross-examine Dr. Smith. *Louisville Trust* and *DeRocco* were personal injury actions based on asbestos-related claims. Like the current consolidated actions, they asserted J–M's culpability. Suits by end users of asbestos and suits by J–M employees implicate J–M's corporate knowledge equally.

J–M Defendants point out that the *Louisville Trust* and *DeRocco* plaintiffs sought recovery on theories of negligence, breach of warranty and misrepresentation, while the current actions involve allegations of intentional and fraudulent activity. That distinction is irrelevant. Under whatever label, the cases pose the question of J–M's awareness of asbestos-related problems. On that score the "similar motive" test is plainly met.[9]

Several other arguments by J–M Defendants appear to suffer from the simplistic notion that a witness' testimony is not admissible unless it deals with all the issues relevant to the litigation. Of course that is not so. To the extent J–M Defendants do not view Dr. Smith's testimony as fully representative of J–M's knowledge of the art, efforts to protect its employees against asbestos-related risks or any other matter, they are free to adduce any other evidence they choose.

This opinion does not treat with the possibility that some portions of Dr. Smith's deposition testimony (as distinct from the depositions as a whole) may be excludable because of the absence of "similar motive." That prospect has not been posed adequately by the parties' memoranda.

### Prejudice to Non-J–M Defendants

Plaintiffs concede neither deposition is admissible against the several defendants ("Supplier Defendants") joined because they supplied asbestos to J–M Defendants. Thus each jury will have to be instructed that the Dr. Smith testimony can be considered only as to J–M Defendants. Supplier Defendants invoke Rule 403 to withhold introduction of the depositions entirely under those circumstances:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury....[10]

That argument is unpersuasive.

Dr. Smith's testimony has considerable probative value. He was J–M's *only* full-

---

**9.** J–M Defendants also argue that the current plaintiffs seek punitive damages. But raising the stakes does not change motive.

**10.** J–M Defendants also urge other bases for potential prejudice to themselves under Rule 403. Their arguments have been considered and are wholly without merit.

time physician and an expert as to asbestos-related diseases. At least as to the knowledge of the J–M Defendants (and perhaps on other issues as well), Dr. Smith's testimony may be viewed by a jury as highly probative.

On the other side of the scale, Supplier Defendants' position really reflects a mistrust of the jury system. Multi-defendant cases grounded on allegedly intentional torts frequently involve testimony or other evidence relevant to fewer than all the defendants. It is not at all unusual to require a jury to sift such evidence. Closing arguments and an appropriate jury instruction will provide Supplier Defendants the protection to which they are entitled.

Supplier Defendants also assert parts of the Dr. Smith depositions deal with issues irrelevant to the cases before the Court. Those arguments have not been fully developed by the dialogue in the parties' memoranda, but at least to this point the balancing test imposed by Rule 403 does not weigh so much in defendants' favor as to require exclusion of any specific parts of the depositions.

### Conclusion

Plaintiffs' motion to permit use of the *Louisville Trust* deposition at trial is granted.[11] J–M Defendants' motion in limine to exclude the Dr. Smith depositions is denied. Any decision as to exclusion of designated portions of Dr. Smith's testimony must await more specific submissions by the parties.

---

11. As indicated in this opinion, like considerations would apply were the *DeRocco* deposition offered as well.