In re RELATED ASBESTOS CASES.

No. C–79–3588 RFP.

United States District Court,
N. D. California.

May 5, 1982.

Arthur Jay Moore, Jr., Moore, Clifford, Wolfe, Larson & Trutner, Oakland, Cal., for defendant Johns-Manville Corp.

Charles Negley, Douglas G. Wah, Maloney, Chase, Fisher & Hurst, San Francisco, Cal., for defendant Raybestos-Manhattan, Inc.

Frank E. Bondonno, Popelka, Allard, McCowan & Jones, San Jose, Cal., for defendant Owens-Corning Fiberglas Corp.

Ronald E. Hothem, San Francisco, Cal., for defendant Fibreboard Corp.

Berry & Berry, Oakland, Cal., for defendant Celotex Corp.

Winingham, Roberts & Rogie, San Francisco, Cal., for defendant Eagle-Picher Industries, Inc.

Gary T. Drummond, Stevens & Drummond, Walnut Creek, Cal., Haims, MacGowan & McInerney, Oakland, Cal., for defendant Amatex Corp.

Charles W. LaGrave, Law Offices of William J. Duke, San Francisco, Cal., for defendant H. K. Porter Inc.

Law Offices of Hassard, Bonnington, Rogers & Huber, San Francisco, Cal., for defendant Pittsburgh Corning Corp.

Wilkes R. Morgan, Bronson, Bronson & McKinnon, San Francisco, Cal., for defendant Unarco Industries, Inc.

Lawrence E. Mullally, Inc., Oakland, Cal., for defendant Keene Corp.

Gudmundson, Siggins & Stone, San Francisco, Cal., for defendant Armstrong Cork Co.

McCutchen, Doyle, Brown & Enerson, San Francisco, Cal., for defendant GAF Corp.

Law Offices of William I. Duke, San Francisco, Cal., for defendant Southern Textile & Thermoid.

Robert A. Ford, Case & Ford, San Francisco, Cal., for defendant Combustion Engineering, Inc.

Morgenstein, Ladd & Jubelirer, San Francisco, Cal., for defendant Owens-Illinois, Inc.

Kenneth W. Carlson, Burke W. Bradley, John Gigounas, Esq. Law Offices of Kenneth W. Carlson, Oakland, Cal., Norman B. Hendricks, Law Offices of Norman B. Hendricks, Berkeley, Cal., for plaintiff Deanne J. Snyder.

Gerald C. Sterns, Law Offices of Gerald C. Sterns, San Francisco, Cal., for plaintiffs.

St. Clair, Zappettini, McFetridge, San Francisco, Cal., for defendant Nicolet, Inc.

Al Norris, Crosby, Heafey, Roach & May, Oakland, Cal., for defendant Southern Pacific Trans. Co.

Stuart M. Gordon, Gordon & Rees, San Francisco, Cal., for defendant The Bendix Corp.

Harold Cohn, O'Connor, Cohn, Dillon & Barr, James L. English, San Francisco, Cal., Douglas L. Field, Taylor & Field, Oakland, Cal., Frederick Bradley, Mead, Bradley, & Keenan, San Francisco, Cal., W. Conrad Hoskins, Bianchi, Hoskins & Rosenberg, San Rafael, Cal., for defendant Ryder Industries, Inc.

James P. Busselle, Ream, Train, Horning, Ellison & Roskoph, Palo Alto, Cal., for defendant Wagner Elec. Corp.

Patrick H. Fabian, Sullivan, Roche & Johnson, San Francisco, Cal., for defendant Abex Corp.

Ropers, Majeski, Kohn, Bentley, Wagner & Kane, San Francisco, Cal., for cross-defendant Thiokol Corp.

Law Offices of Glenn P. Lewis, Lafayette, Cal., for cross-defendant Carlisle Corp.

George W. Ball, Low, Ball & Lynch, San Francisco, Cal., for cross-defendant American Motors.

James J. Marchiano, Crosby, Heafey, Roach & May, Oakland, Cal., for cross-defendant Chrysler Corp.

Thompson, Mayew & Michel, Sacramento, Cal., for cross-defendant Worldbestos.

## ORDER

PECKHAM, Chief Judge.

The motions discussed herein having come before this court for hearing on March 23 and April 27, 1982, the court having reviewed the memoranda submitted in support of and in opposition to the motions, and having heard argument of counsel, the court's rulings are as follows.

## DEPOSITIONS OF DR. KENNETH W. SMITH

Plaintiff has moved to introduce into evidence the depositions of Dr. Kenneth Wallace Smith taken on two previous occasions in two separate proceedings: *James Roy DeRocco and Andrew v. Carollo v. Forty-Eight Insulations, Inc., et al.*, Court of Common Pleas of Allegheny County, Pennsylvania, Civil Division, Case No. 7880, July Term, 1974, Case No. 2281, July Term, 1974; and *Louisville Trust Co. v. Johns-Manville Corp.*, Jefferson Circuit Court, Common Pleas Branch, Seventh Division of Kentucky, Case No. 174–922. The *DeRocco* deposition was taken on January 13, 1966; the *Louisville* deposition on April 21, 1976.

Dr. Smith was employed by defendant Johns-Manville from the mid-1940s until 1966. He was the medical director of Canadian Johns-Manville until 1951. He subsequently became the medical director of Johns-Manville Corporation. He worked in the latter capacity until 1966. He died in 1977, the year after the *Louisville* deposition was taken.

In general, the deposition testimony in question tends to establish that Dr. Smith was aware of the hazards of asbestos as early as the 1940s and that he began warning Johns-Manville officers of the hazards in the late 1940s. The testimony is thus relevant to the question whether and at what point Johns-Manville had notice of the hazards of asbestos.

In order to introduce the Smith depositions into evidence, plaintiff must meet the requirements of Fed.R.Civ.P. 32(a)[1] and

---

1. Fed.R.Civ.P. 32(a) states:

 (a) Use of Depositions. At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:

 (1) Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness.

Fed.R.Evid. 804(b)(1).[2] Essentially, the requirements are that: (1) the deponent be unavailable to testify live; (2) the testimony be taken in the course of another proceeding, in compliance with the law; and (3) the party against whom the testimony is offered, or its predecessor in interest, have had an opportunity and similar motive to develop the testimony in full. These three requirements are discussed in turn below.

### 1. *Unavailability of Deponent*

As Dr. Smith died in 1977, this test is easily met.

### 2. *Deposition Taken in Compliance with Law*

a. *The DeRocco deposition.* The *DeRocco* deposition was taken in Pennsylvania. Penn.R.Civ.P. 4017(c) provides:

(c) When the testimony is fully transcribed the deposition shall be submitted to the witness for inspection and signing and shall be read to or by him and shall be signed by him, unless the inspection, reading and signing are waived by the

witness and by all parties who attended the taking of the deposition, or the witness is ill or cannot be found or refuses to sign. Any changes in form or substance which the witness desires to make shall be entered with a statement of the reasons given by the witness for making the changes. If the deposition is not signed by the witness, the person before whom the deposition was taken shall sign it and state on the record the fact of the waiver or of the illness or absence of the witness or the refusal to sign together with the reason, if any, given therefor; and the deposition may then be used as fully as though signed, unless the court holds that the reasons given for the refusal to sign require rejection of the deposition in whole or in part.

█ Dr. Smith never signed the *DeRocco* deposition. Johns-Manville argues that this means the *DeRocco* deposition is inadmissible. This argument was recently rejected by Judge Milton I. Shadur of the Northern District of Illinois, who ruled that the lack of a signature was not fatal to the admissi-

---

(2) The deposition of a party or of anyone who at the time of taking the deposition was an officer, director, or managing agent, or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a public or private corporation, partnership or association or governmental agency which is a party may be used by an adverse party for any purpose.

(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: (A) that the witness is dead; or (B) that the witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of the United States, unless it appears that the absence of the witness was procured by the party offering the deposition; or (C) that the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment; or (D) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or (E) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.

(4) If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce any other part

which ought in fairness to be considered with the part introduced, and any party may introduce any other parts.

Substitution of parties pursuant to Rule 25 does not affect the right to use depositions previously taken; and, when an action in any court of the United States or of any State has been dismissed and another action involving the same subject matter is afterward brought between the same parties or their representatives or successors in interest, all depositions lawfully taken and duly filed in the former action may be used in the latter as if originally taken therefor.

**2.** Fed.R.Evid. 804(b)(1) states:

(b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

bility of the *DeRocco* deposition, since Dr. Smith had submitted a signed list of corrections to the deposition on his own letterhead. This "constituted effective compliance with the controlling Pennsylvania law requirement of deposition signature by the witness (the deposition also contained the other legal assurances of authenticity: the court reporter's statement and certificate.)" *Consolidated Pretrial*, 93 F.R.D. 853 (N.D. Ill., E. Div., 1982), *reprinted in* Asbestos Litigation Reporter, 4853, 4854 (April 9, 1982).

We concur in Judge Shadur's reasoning and hold that the *DeRocco* deposition was in effective compliance with the signature requirement.

b. *The Louisville deposition.* The *Louisville* deposition was taken in Windsor, Ontario, Canada. It, too, was unsigned by Dr. Smith. Again, Johns-Manville argues that it is inadmissible for this reason. The governing law is that of Kentucky, the forum state of the *Louisville* deposition. Ky.R. Civ.R. 30.05 provides:

Rule 30.05. Submission to witness—Changes—Signing.—Any party to an action may make written request before the officer taking a deposition therein that it be submitted to the witness. In such event, and when the testimony is fully transcribed, the deposition shall be submitted to the witness for examination and shall be read to or by him. Any changes in form or substance which the witness desires to make shall be entered upon the deposition by the officer with a statement of the reasons given by the witness for making them. The deposition shall then be signed by the witness unless the witness is ill or cannot be found or refuses to sign. If the deposition is not signed by the witness, the officer shall sign it and state on the record the fact of the illness or absence of the witness or the fact of the refusal to sign together with the reason, if any, given therefor; and the deposition may then be used as fully as though signed, unless on a motion to suppress under Rule 32.04 the court holds that the reasons given for the re-

fusal to sign require rejection of the deposition in whole or in part.

■ Although the rule just quoted suggests that review and signature of a deposition by the deponent is waived if it is not requested by a party, Kentucky case law indicates that such a waiver is effective only in the proceeding in which the deposition is originally taken. A waiver of review and signature by the original parties cannot serve to render the deposition admissible in a subsequent proceeding. *Louisville & N. R. Co. v. Carter*, 66 S.W. 508, 508–09 (Ky. 1902).

However, the federal courts have been fairly liberal in admitting unsigned depositions into evidence where the deponent is deceased. *See Bernstein v. Brenner*, 51 F.R.D. 9, 11–13 (D.D.C.1970). In considering whether to suppress such a deposition, "the factors to be considered are the relevance and importance of the testimony, the degree to which the evidence is impaired by the witness' failure to review, correct and sign the deposition and the prejudice that might result from its use." *Id.* at 13.

■ Applying the *Bernstein* factors, it appears that Dr. Smith's testimony is highly relevant to the present litigation; that Johns-Manville has not pointed out any errors in the deposition, and so has not established that the evidence is impaired by Dr. Smith's failure to review his testimony; and that Johns-Manville has not made any real showing of prejudice which might result if we were to admit the deposition. Accordingly, we find that the fact that the *Louisville* deposition is unsigned by Dr. Smith does not render the deposition inadmissible.

3. *Opportunity and Similar Motive and Interest to Develop Smith's Testimony*

The threshold question here is whether the issues in *DeRocco* and *Louisville* were similar to the issues in the present cases. *See, e.g., Rule v. International Association of Bridge, Structural and Ornamental Ironworkers, Local Union No. 396*, 568 F.2d 558 (8th Cir. 1977); *Fullerform Continuous Pipe Corp. v. American Pipe & Construction Co.*,

44 F.R.D. 453 (D.Ariz.1968); *Hertz v. Graham,* 23 F.R.D. 17 (S.D.N.Y.1958).

The plaintiffs in *DeRocco* and *Carollo* were asbestos insulators suing asbestos manufacturers, a local distributor of asbestos products, plaintiffs' union, and plaintiffs' employer. Although, due to the variety of defendants who were parties to *DeRocco* and *Carollo,* there were some issues in *DeRocco* and *Carollo* which are not present in the cases before this court, those additional issues are not significant for present purposes. Dr. Smith's testimony was taken in those cases in order to establish that Johns-Manville had notice of the hazards of asbestos as of a certain date. As to that issue, at least, Johns-Manville had a motive to cross-examine Dr. Smith similar to the motive he would have in the current litigation. Since plaintiffs presently seek to use only those portions of the depositions which pertain to the notice issue, the additional issues in the *DeRocco* and *Carollo* cases do not preclude a finding that Johns-Manville's motive for cross-examining Dr. Smith in those cases was similar to its motive in the instant cases.

The plaintiff in the *Louisville* case was not a shipyard worker, as are the plaintiffs before this court. However, he did grind, cut, and size sheets of asbestos boarding. That is, he worked with fabricated asbestos products, as did the plaintiffs in the Northern District of California. Dr. Smith's testimony that he warned Johns-Manville of the hazards of asbestos is as relevant to the claims of shipyard workers as it was to the plaintiff in the *Louisville* case. Defendant's motive for cross-examination was sufficiently similar so as not to preclude use of the *Louisville* deposition in the present litigation.

■ Johns-Manville argues, however, that its interest in cross examining Dr. Smith was not as intense during the *DeRocco* and *Louisville* depositions as it would have been in the current litigation. Johns-Manville notes that there were fewer asbestos cases when the depositions were taken, so that it did not see as great a need for vigorous cross-examination at that point.

Johns-Manville also notes that the Smith depositions were taken for discovery purposes and not for trial, so that, again, its interest in cross-examining Dr. Smith at that stage was attenuated. We are unpersuaded by these arguments. Johns-Manville ran a risk in failing to cross-examine Dr. Smith vigorously when it had the opportunity to do so. Dr. Smith is unavailable now. We refuse to exclude highly relevant testimony because Johns-Manville's failure to avail itself of an ample opportunity to cross-examine Dr. Smith turns out, in retrospect, to have been a tactical error.

■ Johns-Manville's contentions that Dr. Smith's testimony should be excluded on grounds of prejudice and confusion are without merit. We should note in connection with one such objection that, to the extent that the admission into evidence of the Smith depositions runs the risk of alerting the jury to the existence of other asbestos lawsuits, references to such lawsuits may be deleted from the depositions in accordance with our previous ruling to that effect.

■ Accordingly, plaintiffs' motions to admit Dr. Smith's *DeRocco* and *Louisville* depositions is hereby granted, subject to specific evidentiary objections which may arise in the course of the trials.

### OWENS–CORNING FIBERGLAS' MOTION TO EXCLUDE OWENS–ILLINOIS DOCUMENTS

■ Plaintiffs plan to introduce against Owens-Corning Fiberglas certain documents of Owens-Illinois, in order to show that Owens-Corning Fiberglas had notice of the hazards of asbestos. To establish that the Owens-Illinois documents are relevant to Owens-Corning Fiberglas' knowledge of asbestos hazards, plaintiffs will have to establish that Owens-Corning Fiberglas received the documents from Owens-Illinois. Plaintiffs will seek to establish this by showing that Owens-Corning Fiberglas received the Owens-Illinois documents from Owens-Illinois in 1958 when Owens-Corning Fiberglas purchased Owens-Illinois' asbes-

tos insulation product manufacturing facilities. It appears questionable whether plaintiffs' sole witness on this subject, Willis G. Hazard, has personal knowledge as to whether the Owens-Illinois documents were ever actually sent to Owens-Corning Fiberglas.

Accordingly, Owens-Corning Fiberglas moves that we treat the Owens-Illinois documents as conditionally relevant to Owens-Corning Fiberglas under Fed.R.Evid. 104(b). We hereby grant this motion. Until plaintiffs have presented admissible evidence sufficient to support a finding that Owens-Corning Fiberglas had actual knowledge of the contents of the Owens-Illinois documents, the documents will not be admitted into evidence against Owens-Corning Fiberglas. Moreover, if the documents are allowed into evidence against Owens-Illinois but not against Owens-Corning Fiberglas, we will instruct the jury as to the limited admissibility of the Owens-Illinois documents pursuant to Fed.R.Evid. 105.

### EXPERT WITNESSES

Plaintiffs will seek to qualify environmental consultant Barry Castleman as an expert witness in order to introduce into evidence a list which he has compiled of articles allegedly relating to the hazards of asbestos. These articles were published in various American and European medical journals from the late Nineteenth Century through the 1930s. Plaintiffs claim that evidence of the existence of these articles is relevant to the question whether the defendants, who are held to the knowledge and skill of an expert, knew or should have known of the dangers of asbestos during the period when the articles were disseminated. *See generally, Borel v. Fiberboard Paper Products Corp.*, 493 F.2d 1076, 1089–90 (5th Cir. 1979), *cert. denied*, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974).

Defendants move to exclude Mr. Castleman's testimony, challenging his qualifications as an expert witness under Fed.R. Evid. 702. Plaintiffs concede that Mr. Castleman, who is not a medical doctor, is not qualified to interpret or analyze the content of the articles he lists in his bibliography. He would only be able to testify that he located the articles and that he used basic research methods in so doing. This testimony, plaintiffs argue, would tend to establish that the defendants should have located the articles with similar efforts, and so should have put themselves on notice as to the hazards of asbestos. Plaintiffs contend that since the existence of the articles is beyond the ken of the ordinary layperson, and since Mr. Castleman's knowledge of the articles will aid the jury in its determination of the notice issue, Mr. Castleman qualifies as an expert under Fed.R.Evid. 702.

Although we understand the relevance of the articles to the standard of knowledge to which defendants should be held, we are reluctant to place the names of the articles before the jury without providing the jury with an expert witness who can indicate how the articles were received by the medical community when they were first published, and whether the articles do, in fact, discuss the hazards of asbestos. As noted above, plaintiffs concede that Mr. Castleman is not qualified to interpret the articles in this manner. Although plaintiffs have offered to have Mr. Castleman read excerpts from selected articles in order to convey to the jury the overall conclusions of the authors, we are not persuaded that Mr. Castleman, as a layperson, possesses the expertise necessary to read complex, technical medical articles and discern which portions of the articles would best summarize the authors' conclusions. Moreover, even if the articles did contain discrete summaries of their contents which could be read by Mr. Castleman, plaintiffs concede that Mr. Castleman would be unable to describe the reaction of the medical community to the articles at the time they were first published.

In light of the above, we find that Mr. Castleman's testimony will not "assist the trier of fact to understand the evidence or to determine a fact in issue" within the meaning of Fed.R.Evid. 702. Plaintiffs have failed to establish with respect to Mr. Castleman's testimony that "the witness

[has] ... such knowledge or experience in [a scientific, professional, business, or occupational] ... field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." *Fineberg v. United States*, 393 F.2d 417, 421 (9th Cir. 1968). Accordingly, defendants' motion to deny Mr. Castleman the status of an expert witness is granted.

We do not, however, preclude plaintiffs from proffering Mr. Castleman as a foundational witness. He may testify that he investigated articles written on the subject of asbestos hazards, describe his research methods, and identify the articles which he located. The articles, or a list thereof, may then be marked for identification. However, the articles or list of articles will not be admitted into evidence unless plaintiffs elicit, from a qualified expert witness, testimony which will clarify for the trier of fact what the content of each article is, whether the source which published each article was well-known or obscure, and how each article was received by the medical community.

■ Plaintiffs have submitted a cross-motion to exclude the testimony of H. Corwin Hinshaw, Sr., M.D. Plaintiffs do not challenge Dr. Hinshaw's qualifications as an expert witness. Instead, they argue that Dr. Hinshaw's testimony is irrelevant.

Dr. Hinshaw would testify that, until 1964, it was not known in the medical community that asbestos was hazardous to insulators and shipyard workers such as plaintiffs. This evidence would tend to undercut plaintiffs' claim that defendants should have known of the dangers of asbestos to insulation and shipyard workers during the periods in which plaintiffs were exposed to asbestos. Dr. Hinshaw's testimony is thus relevant on the question of notice. *See Borel v. Fibreboard Paper Products Corporation, supra*, 493 F.2d at 1089–90. Accordingly, plaintiffs' motion to exclude Dr. Hinshaw's testimony is denied.

## EMPLOYER CONDUCT

Plaintiffs were insulators and shipyard workers employed by the United States Navy during varying periods. In the course of their employment with the Navy, plaintiffs were allegedly exposed to asbestos products manufactured by defendants. Plaintiffs claim that defendants' asbestos products caused injury to them.

■ As an affirmative defense, defendants claim that the Navy was negligent in failing to provide plaintiffs with a safe work place and that this negligence constituted a superseding cause sufficient to relieve defendants of liability. As plaintiffs concede, this is a viable defense to defendants' alleged negligence. *Stewart v. Cox*, 55 Cal.2d 857, 13 Cal.Rptr. 521, 362 P.2d 345 (1961). However, plaintiffs contend that the defense of superseding cause does not apply to strict liability in tort. We are unable to agree. "[S]trict liability never has been, and is not now, *absolute* liability." *Daly v. General Motors Corp.*, 20 Cal.3d 725, 733, 144 Cal.Rptr. 380, 575 P.2d 1162 (1978) (emphasis in original). The plaintiff in a strict liability case must still prove that a defect in the design or manufacture of a product was a proximate cause of injury. *Cronin v. J. B. E. Olson Corp.*, 8 Cal.3d 121, 133, 104 Cal.Rptr. 433, 501 P.2d 1153 (1972). In connection with the issue of proximate cause, the defendant in a strict liability case may assert the affirmative defense that the negligence of the plaintiff's employer constituted a superseding cause which relieves the defendant of strict liability. *See Balido v. Improved Machinery, Inc.*, 29 Cal.App.3d 633, 645–47, 105 Cal.Rptr. 890 (1972), a strict liability case in which the court discussed various cases on superseding cause and then noted, "We are persuaded by these cases that ... the question of superseding cause between successive wrongdoers presents an issue for determination by the trier of fact." *Id.* at 647, 105 Cal.Rptr. 890. Accordingly, plaintiffs' motion to strike the defense of superseding cause as it relates to strict liability is hereby denied.

■ Under applicable California law, plaintiffs may, of course, undercut the affirmative defense of superseding cause by demonstrating that the Navy's alleged negligence was foreseeable by defendants and

so should not absolve defendants of liability.[3] *Id.* at 644–47, 105 Cal.Rptr. 890; Restatement Second of Torts § 447, approved in *Stewart v. Cox, supra,* 55 Cal.2d at 863, 13 Cal.Rptr. 521, 362 P.2d 345.

Similarly, defendants assert the affirmative defense that the Navy was a "sophisticated user" of asbestos products—that is, that the Navy, as an employer, was as aware of the dangers of asbestos as were defendants and that the Navy nonetheless misused the products, thereby absolving the defendants of liability for failure to warn the Navy's employees of the products' dangers. This defense has been allowed in various federal courts applying state law under diversity jurisdiction. *See, e.g., Bradco Oil & Gas Co. v. Youngstown Sheet & Tube Co.,* 532 F.2d 501 (5th Cir. 1976), *cert. denied,* 429 U.S. 1095, 97 S.Ct. 1111, 51 L.Ed.2d 542 (1977) (sophisticated user doctrine applied in a strict liability case); *Marker v. Universal Oil Products Co.,* 250 F.2d 603 (10th Cir. 1957); *Littlehale v. E. I. Du Pont de Nemours & Co.,* 268 F.Supp. 791 (S.D.N.Y.1966), *aff'd,* 380 F.2d 274 (2d Cir. 1967) (sophisticated user doctrine applied to blasting caps, an inherently dangerous product).

■ The California courts have not yet clearly embraced the sophisticated user doctrine. However, dictum in *Fierro v. International Harvester Co.,* 127 Cal.App.3d 862, 179 Cal.Rptr. 923 (1982), a strict liability case, indicates that the defense is taking hold in California. There, the court noted that International, the manufacturer of a truck, had no duty to warn plaintiff's deceased of the hazards of the truck's fuel tank design where the truck's features were known to or readily observable by Luer, employer of the deceased. "[T]here was nothing about the International unit which

required any warning to Luer. A sophisticated organization like Luer does not have to be told that gasoline is volatile and that sparks from an electrical connection or friction can cause ignition." *Id.* at 866, 179 Cal.Rptr. 923. Although the comments in *Fierro* were merely dicta, the sophisticated user doctrine discussed therein is so similar in principle to the defense of superseding cause, which California does allow, that we believe the highest California court would permit the defense, provided, once again, that the plaintiffs were permitted to negate the defense by showing that the sophisticated employer's misuse of the product was foreseeable, and so did not absolve the defendants of liability for failure of the duty to warn. Accordingly, we hereby deny plaintiffs' motion to strike the affirmative defense that the Navy was a sophisticated user of the asbestos products in question.

## GOVERNMENT SPECIFICATIONS

Defendants have asserted as an affirmative defense that in order for an asbestos product to be purchased by the Navy, it had to meet strict Navy specifications which set standards for content of asbestos fiber, performance, and packaging. Plaintiffs move to strike this defense.

■ All parties agree that, due to the national defense implications of the use of asbestos products by the Navy, these cases are controlled by federal law relating to the government specifications defense. *See In re "Agent Orange Product" Liability Litigation,* 534 F.Supp. 1046 (E.D.N.Y.1982), *reprinted* at Asbestos Litigation Reporter 4,841, (April 9, 1982); *In re "Agent Orange Product" Liability Litigation,* 506 F.Supp. 762, 794 (E.D.N.Y.1980).

---

**3.** Negligence by one to whom the manufacturer has delegated some phase of its manufacturing process is essentially treated as foreseeable as a matter of law, so that it can never absolve the manufacturer of strict liability. *See Vandermark v. Ford Motor Co.,* 61 Cal.2d 256, 37 Cal.Rptr. 896 (1964). That principle has been applied primarily in contexts involving the delegation of a phase of the manufacturing process to an authorized dealer of the manufacturer.

In the instant cases, there is apparently no evidence that defendants delegated any portion of the manufacturing process to the Navy. Accordingly, at this stage of the litigation, we are unable to say that *Vandermark* precludes defendants from attempting to prove that the Navy's negligence was a superseding cause.

 Under the government specifications defense, "as a matter of public policy, a manufacturer who supplies equipment to the United States [military] . . . in a time of war pursuant to government specifications may not be held liable for any inadequacy in the plans." *Id.* Thus, the government specifications doctrine gives rise to an affirmative defense whereby the defendant has the burden of proving the following three elements:

1. That the government established the specifications for [a product which allegedly caused an injury]. . .;

2. That the [product] . . . manufactured by the defendant met the government's specifications in all material respects; and

3. That the government knew as much as or more than the defendant about the hazards to people that accompanied use of [the product] . . .

*In re "Agent Orange Product" Liability Litigation, supra,* Asbestos Litigation Reporter at 4,847.

 We cannot say at the present time that the government specifications defense has no applicability to the asbestos litigation currently before us. Accordingly, plaintiffs' motion to strike the government specifications defense is denied.

 However, it appears that the defendants were under varying government strictures at various relevant periods. Moreover, it appears that, upon occasion, the defendants did not specifically manufacture asbestos products in accordance with government specifications, but instead merely supplied the Navy with the same products with which they filled orders for non-military uses. Because of such factual variations among the asbestos cases before this court, we cannot say at this time that the government specifications defense will be allowed in every case. A case-by-case determination of this issue will be made, based upon the evidentiary record in each action.

The rulings contained herein will apply to all related asbestos cases in the Northern District of California where counsel have had notice and an opportunity to participate in the hearings on these issues, subject to new developments in the law or to factual inapplicability of our rulings to specific asbestos cases.

SO ORDERED.