William TEMPLE and Lorraine Temple, his wife, and Alfonso Crisconi and Marie Crisconi, his wife, Plaintiffs,

v.

RAYMARK INDUSTRIES, INC., Defendant.

Superior Court of Delaware, New Castle County.

Submitted: June 2, 1988.
Decided: June 9, 1988.
Opinion Issued: June 17, 1988.

Robert Jacobs of Jacobs and Crumplar, P.A., Wilmington, for plaintiffs.

C. Scott Reese of Cooch and Taylor, Wilmington, and James D. Coleman (argued) of Ballard, Spahr, Andrews and Ingersoll, Philadelphia, Pa., for defendant.

TAYLOR, Judge.

Plaintiffs seek to present portions of a deposition of Dr. Kenneth Smith, taken by plaintiffs in 1976 in a case in the United States District Court for the Western District of Pennsylvania bearing upon the knowledge of the health hazards of asbestos. Dr. Smith served as Medical Director of Johns–Manville Corporation from 1952 until 1966. Johns–Manville was a defendant in that case and it participated in the cross-examination of Dr. Smith at that deposition. That suit involved a claim by a worker for damages for disease resulting from exposure to asbestos products.

This suit against Raymark rests on conspiracy. However, an essential element of proof must be a showing that Raymark and the other alleged co-conspirators knew of the dangers of asbestos exposure and that a co-conspirator supplied asbestos to plaintiffs' work place without adequate warning. *Nicolet, Inc. v. Nutt,* Del.Supr., 525 A.2d 146 (1987).

Dr. Smith died subsequent to the taking of that deposition. Plaintiffs rely on Rule 804(b)(1) of the Delaware Uniform Rules of Evidence for the use of that deposition in this case. The Rule provides:

(b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) Former Testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross or redirect examination.

That provision tracks Rule 804(b)(1) of the Federal Rules of Evidence. Several Federal Court decisions have considered the applicability of that Rule as a ground for admitting Dr. Smith's deposition in suits involving claims by plaintiffs who seek recovery for diseases resulting from exposure to asbestos and have permitted it to be used even though defendants in such cases who opposed use of the depositions were not parties to the case in which the deposition was taken. *See, e.g., Dykes v. Raymark Industries, Inc.,* 6th Cir., 801 F.2d 810 (1986) (deposition held admissible against National Gypsum Company); *Cathey v. Johns–Manville Sales Corp.,* 6th Cir., 776 F.2d 1565 (1985) (deposition held admissible against Johns–Manville); *Dartez v. Fibreboard Corp.,* 5th Cir., 765 F.2d 456 (1985) (deposition held admissible against Raymark (case dismissed as to Raymark on other grounds), Celotex Corp., Fibreboard Corp., Owens–Illinois, Inc., and Pittsburgh Corning Corp.); *Hendrix v. Raybestos–Manhattan, Inc.,* 11th Cir., 776 F.2d 1492 (1985) (deposition held admissible against Johns–Manville and Raymark); *Hansen v. Johns–Manville Products Corp.,* 5th Cir., 734 F.2d 1036 (1984) (deposition held admissible against Johns–Manville); *Clay v. Johns–Manville Sales Corp.,* 6th Cir., 722 F.2d 1289 (1983) (deposition held admissible against Raymark); *Moran v. Johns–Manville Sales Corp.,* 6th Cir., 691 F.2d 811 (1982) (deposition held admissible against Johns–Manville); *In the Matter of Johns–Manville/Asbestosis Cases,* N.D.Ill., 93 F.R.D. 853 (1982) (deposition held admissible against Johns–Manville, Johns–Manville Sales and Canadian Johns–Manville); *Neal v. Carey Canadian Mines. Ltd.,* E.D.Pa., 548 F.Supp. 357 (1982) (deposition held admissible against Johns–Manville). The interpretation of Rule 804(b)(1) adopted in those cases was announced in *Lloyd v. American Export Lines, Inc.,* 3d Cir., 580 F.2d 1179, 1185 (1978), *cert. denied,* 439

U.S. 969, 99 S.Ct. 461, 58 L.Ed.2d 428 (1978) in the following language:

> While we do not endorse an extravagant interpretation of who or what constitutes a "predecessor in interest," we prefer one that is realistically generous over one that is formalistically grudging. We believe that what has been described as "the practical and expedient view" expresses the congressional intention: "if it appears that in the former suit a party having a like motive to cross-examine about the · same matters as the present party would have, was accorded an adequate opportunity for such examination, the testimony may be received against the present party." Under these circumstances, the previous party having like motive to develop the testimony about the same material facts is, in the final analysis, a predecessor in interest to the present party. *Id.* at 1187.

That test is whether the party involved in the case in which the deposition was taken, Johns–Manville, had an opportunity and similar motive to develop the testimony as the party against whom the testimony is now offered, Raymark. Since Delaware adopted Rule 804(b)(1) from the Federal Rule of the same designation, this Court will apply the interpretation which has been given to the Federal Rule.

Raymark contends that that standard is not met here because Raymark is, in this case, defending against a claim based solely on conspiracy and not based on presence of its asbestos at the work place, while in the deposition case the claim against Johns–Manville charged that plaintiffs were injured by actual exposure to Johns–Manville's asbestos.

The portion of Dr. Smith's deposition which plaintiffs seek to present deals with the existing knowledge primarily of Johns–Manville with respect to asbestos health dangers. This is not being offered to prove conspiracy.

■ The requirements for admissibility under Rule 804(b)(1) are that the prior testimony must have included (1) the opportunity for cross-examination in the deposition case, and (2) a similar motive on the part of the cross-examining party to pursue full and effective examination of the witness on the subject about which the witness is testifying. This Rule represents a sharp departure from the common law requirement that the parties and the issues must be the same. 4 *Weinstein's Evidence* § 804(b)(1)[04], p. 804–85.

■ With respect to this deposition, Johns–Manville had the opportunity to cross-examine the witness, and, in fact, did cross-examine the witness. The remaining requirement, similarity of motive, involves consideration of (1) the subject matter covered by the deposition testimony which is sought to be introduced, and (2) whether the issue applicable to the subject matter of the testimony which makes that testimony relevant against this defendant (Raymark) also made that testimony relevant and admissible against the defendant (Johns–Manville) in the case in which the deposition was taken. The analysis does not require that all of the issues of the two cases be identical. 4 *Weinstein's Evidence* § 904(b)(1)[04], p. 804–87. Rather the search is to determine whether the questioner at the deposition and the party involved in this case had similar motive or incentive to cross-examine the deposition witness on the testimony which he gave.

The heart of Raymark's argument is that the testimony should not be admitted because it does not relate to conspiracy and Johns–Manville had no motive to pursue a position that no conspiracy existed. Raymark argues that this establishes absence of similar motive because Raymark here is defending against a charge of conspiracy.

Raymark's contention loses sight of the true test under Rule 804(b)(1). In order to apply that test properly, it is necessary to consider the elements of proof which plaintiffs in this case must sustain and, therefore, the elements which Raymark's defense should deal with. It is not contended that Raymark's asbestos products contributed to plaintiffs' injuries. Hence, Raymark may be held liable only if liability is established by virtue of its being a conspirator. An essential element of that proof is that Raymark and other manufacturers

were aware of health hazards of exposure to asbestos. If Dr. Smith were giving the same testimony at this trial which he gave at his deposition, Raymark's motive would be to discredit his testimony as to his knowledge of such health dangers as medical director of Johns–Manville.

The subject of the proffered deposition testimony relates primarily to the knowledge which Johns–Manville had on that subject and what it did with respect to that knowledge. Johns–Manville is one of those manufacturers who allegedly joined in the conspiracy and whose asbestos products are alleged to have been at plaintiffs' work place while plaintiffs worked there. Clearly, Johns–Manville, in defending against the plaintiffs' claim, had a strong motive to discredit Dr. Smith's testimony that he and Johns–Manville were aware of the health hazards of asbestos. Johns–Manville was in an especially strategic position to do so because Dr. Smith had been Medical Director of Johns–Manville and it was in an excellent position, through correspondence, memoranda and records to and from Dr. Smith and through information gained from those who were associated with him, to discredit his testimony when cross-examining him.

The subject of Dr. Smith's testimony is common to a claim of injury by conspiracy and a claim of injury by product. It involves an element which is essential to both. The conspiracy charge requires proof that the defending conspirator and a co-conspirator who supplied asbestos knew of the dangers of asbestos when the product was supplied, and the injury-by-product claim also requires proof that the supplier knew of the dangers of asbestos when the product was supplied. Frequently, proof of such knowledge involves proof of the information which was available and known within the industry from which the inference might reasonably be drawn that a particular supplier had the required knowledge. That is the subject of Dr. Smith's testimony.

The conclusion drawn from the foregoing analysis is that in challenging Dr. Smith's deposition testimony, Johns–Manville had the same motive to challenge his testimony as the motive which Raymark would have in cross-examining Dr. Smith, if he were present at trial.

Accordingly, the proffered excerpts from Dr. Smith's deposition will be permitted to be read to the jury at this trial.