[L. A. No. 26215. In Bank. May 25, 1961.]

RALPH E. STEWART et al., Respondents, v. LEWIS COX, Appellant.

Caryl Warner, Warner, Sutton & Warner and Barbara Warner for Appellant.

Max Candiotty and Norman Warren Alschuler for Respondents.

GIBSON, C. J. — Plaintiffs, Ralph and June Stewart, brought this action for damages to their real property resulting from the escape of water from a swimming pool con-

structed on the property in a negligent manner. Prior to trial plaintiffs received $4,500 from defendant Wahlstrom Bros., Inc. (hereafter called Wahlstrom), the general contractor who had agreed to construct the pool for them, and they dismissed the action as to this defendant. After commencement of trial, defendants Walter I. Skinner and Walter I. Skinner Pool Plastering Company (hereafter called Skinner), who did the plastering work on the pool, were dismissed from the action upon paying plaintiffs $750. Plaintiffs recovered judgment against defendant Cox, the subcontractor who installed the concrete, and Cox has appealed.

About the middle of August 1957, two days after the pool was first filled with water, a thin crack appeared in the pool, and Mrs. Stewart promptly notified Wahlstrom. Toward the end of September, at the request of Wahlstrom, the pool was examined by Carl J. Stokes, an employee of Skinner, and the next day, at Wahlstrom's instruction, he repaired the crack by widening it slightly and applying plaster to it. When the pool was again filled with water the following day, the crack reappeared and was a little wider and longer than before, and Mrs. Stewart immediately notified Wahlstrom. Two other cracks soon appeared on the same side of the pool. Water loss was two inches per day at first and later three inches per day. Plaintiff's house and yard were undermined and damaged by the escaping water. Early in November a representative of Wahlstrom pumped all the water out of the pool.

The pool was to be constructed by applying a type of concrete called gunite to reinforcing steel in such a manner that the steel would be completely embedded in it. In applying the gunite, Cox permitted the reinforcing steel to lie on the ground, with the result that the gunite did not completely surround it and was not properly reinforced by it. The gunite was too thin for its purpose and not of the thickness called for by the plans. An expert testified that small cracks in swimming pools are not uncommon, that it is not possible to determine by looking at such a crack whether it is caused by a structural defect, and that the usual practice is to send a repair man to fix a small crack by widening it, packing it with cement, and plastering over the top of it.

The trial court found that Cox and his employees gunited the pool negligently, that as a direct and proximate result water escaped and damaged plaintiffs' house, pool, and yard, and that plaintiffs were not guilty of contributory negligence. Total damages were found to be $24,474, from which the court

deducted the sums of $4,500 paid by Wahlstrom and $750 paid by Skinner, giving plaintiffs judgment for $19,224.

A preliminary question is presented by the contention of Cox that the defendants were joint tortfeasors and that recovery against him is barred as a result of the payments made to plaintiffs by Skinner and Wahlstrom and the dismissals of these defendants prior to judgment. It appears without dispute that the payments were made pursuant to covenants not to sue and that each document recited that it was not intended as a release of any claim against any person and that plaintiffs reserved their rights to proceed against all persons except the other party to the covenant.

A covenant not to sue one of several joint tortfeasors does not release the others. (*Lewis* v. *Johnson,* 12 Cal.2d 558, 562 [86 P.2d 99]; see *Holtz* v. *United Plumbing & Heating Co.,* 49 Cal.2d 501, 504-505 [319 P.2d 617]; 2 Witkin, Summary of California Law [7th ed. 1960], pp. 1188-1189; Rest., Torts, § 885; cf. *Pellett* v. *Sonotone Corp.,* 26 Cal.2d 705, 710 et seq. [160 P.2d 783, 160 A.L.R. 863].) While the dismissal as to Skinner took place in open court with consent of the trial judge, it was made pursuant to the agreement between plaintiffs and Skinner and was obviously for the purpose of carrying out the covenant. Since the agreement was in the form of a covenant not to sue and did not operate as a release of Cox, the dismissal should not be considered as having that effect. The case of *Markwell* v. *Swift & Co.,* 126 Cal.App.2d 245 [272 P.2d 47], is disapproved insofar as it may be in conflict with the views expressed herein.[1]

The next question is whether a subcontractor such as Cox may be liable to the owner, with whom he was not in privity of contract, for damage occurring after his work had been ac-

---

[1]It is now provided in section 877 of the Code of Civil Procedure that ''Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort—(a) It shall not discharge any other such tortfeasor from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater; and (b) It shall discharge the tortfeasor to whom it is given from all liability for any contribution to any other tortfeasors.'' Although 877 was enacted in 1957, it is provided in 880 that all sections in the title, including 877, are to be effective as to causes of action accruing on or after January 1, 1958. In view of our conclusion that, even under the common law rules, Cox was not released from liability by the covenants and dismissals, we need not determine whether 877 is applicable here.

cepted by the contractor and the owner. In an early case this court stated that where the work of an independent contractor is completed and accepted by the owner, the contractor is not liable to third persons for damage or injury suffered as a result of the negligent manner in which he performed his contract. (*Boswell* v. *Laird* (1857), 8 Cal. 469, 498 [68 Am. Dec. 345]; in accord, *Kolburn* v. *P. J. Walker Co.*, 38 Cal.App. 2d 545, 550 [101 P.2d 747].) An exception to this rule was first recognized where the thing constructed was imminently dangerous to third persons to the knowledge of the contractor (*Johnston* v. *Long*, 56 Cal.App.2d 834, 837 [133 P.2d 409]), and the exception was later extended in accordance with *MacPherson* v. *Buick Motor Co.*, 217 N.Y. 382 [111 N.E. 1050, Ann.Cas. 1916C 440, L.R.A. 1916F 696] to "all things reasonably certain to place life and limb in peril when negligently made." (*Hale* v. *Depaoli*, 33 Cal.2d 228, 232 [201 P.2d 1, 13 A.L.R.2d 183]; in accord, *Johnson* v. *City of San Leandro*, 179 Cal.App.2d 794, 800-801 [4 Cal.Rptr. 404]; *Hogan* v. *Miller*, 153 Cal.App.2d 107, 112-113 [314 P.2d 230]; *Freeman* v. *Mazzera*, 150 Cal.App.2d 61, 64 [309 P.2d 510]; and *Schifano* v. *Security Building Co.*, 133 Cal.App.2d 70, 72 et seq. [283 P.2d 306].)

In *Dow* v. *Holly Manufacturing Co.*, 49 Cal.2d 720, 724-725 [321 P.2d 736], we quoted the following language from Prosser on Torts (2d ed. 1955), pp. 517-519: "Until quite recent years it was the prevailing rule that the contractor would be liable for any injury resulting from his negligence before his work was completed, but that his responsibility was terminated and he was not liable to any third person once the structure was completed and accepted by the owner. . . . The present state of the law is not altogether clear because of the survival of so many of these exceptions, which afford an opportunity to hold the defendant liable without stating any general rule. It appears, however, that the analogy of *MacPherson* v. *Buick Motor Co.* is at last being accepted. Several recent decisions have placed building contractors on the same footing as sellers of goods, and have held them to the general standard of reasonable care for the protection of anyone who may foreseeably be endangered by the negligence, even after acceptance of the work." (See also *Hanna* v. *Fletcher*, 231 F.2d 469, 472-473 [97 App. D.C. 310].) It is said in an annotation to the Hanna case that there can hardly be any doubt that a contractor should be liable to third persons for

negligence which causes a reasonably foreseeable danger to them. (58 A.L.R.2d 865, 872.)

[■■] In *Biakanja* v. *Irving,* 49 Cal.2d 647, 649 et seq. [320 P.2d 16, 65 A.L.R.2d 1358], we recognized that liability for negligence can exist without privity although the risk involved is only damage to property, and we held that the determination whether in a specific case the defendant will be held liable to a third person is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that he suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, and the policy of preventing future harm. (See also *United States* v. *Rogers & Rogers,* 161 F.Supp. 132.) The liability of a contractor or subcontractor must be determined by applying this general test rather than by arbitrarily placing them in a separate category subject to a special rule. (*Cf. Garcia* v. *Soogian,* 52 Cal.2d 107, 110 [338 P.2d 433].)

[■] Here it was obvious that the pool for which Cox provided the gunite work was intended for the plaintiffs and that property damage to them—and possibly to some of their neighbors—was foreseeable in the event the work was so negligently done as to permit water to escape. It is clear that the transaction between Wahlstrom and Cox was intended to specially affect plaintiffs. There is no doubt that plaintiffs suffered serious damage, and the court found, supported by ample evidence, that the injury was caused by Cox's negligence. Under all the circumstances Cox should not be exempted from liability if negligence on his part was the proximate cause of the damage to plaintiffs.

Cox contends that Wahlstrom's conduct after the crack in the pool was discovered constituted a superseding cause which prevents Cox from being liable. He asserts that Wahlstrom had actual knowledge for a period of over two months that the pool had cracked and was leaking, as a result of which a dangerous quantity of water was going into the ground, and that Wahlstrom undertook the repairing of the pool without informing Cox of the defects but negligently failed to make effective repairs or prevent refilling of the pool.

The rules set forth in sections 442-453 of the Restatement of Torts for determining whether an intervening act of a third person constitutes a superseding cause which prevents antecedent negligence of the defendant from being a proximate

864

cause of the harm complained of have been accepted in California. (See, for example, *McEvoy* v. *American Pool Corp.*, 32 Cal.2d 295, 298-299 [195 P.2d 783] ; *Mosley* v. *Arden Farms Co.*, 26 Cal.2d 213, 219 [157 P.2d 372, 158 A.L.R. 872].)

 Under these rules the fact that an intervening act of a third person is done in a negligent manner does not make it a superseding cause if a reasonable man knowing the situation existing when the act of the third person is done would not regard it as highly extraordinary that the third person so acted or the act is a normal response to a situation created by the defendant's conduct and the manner in which the intervening act is done is not extraordinarily negligent. (See Rest., Torts, § 447 ;[2] *Stasulat* v. *Pacific Gas & Elec. Co.*, 8 Cal. 2d 631, 637 [67 P.2d 678].) The fact that a third person does not perform his duty to protect the plaintiff from harm, either because he makes no effort or through his negligence does not succeed, is not a superseding cause. (Rest., Torts, § 452.[3])

 Although the evidence may point to negligence of Wahlstrom, the record does not establish that Wahlstrom actually knew that the condition was dangerous. The negligence of Wahlstrom, if any, consisted of its failure to perform its duty to the Stewarts to protect them from the harm threatened by the negligence of Cox, and its conduct was not, as a matter of law, highly extraordinary. Therefore it did not constitute a superseding cause, and the finding of the trial court that plaintiffs were damaged as a direct and proximate result of Cox's negligence must be upheld. Our conclusion is in accord with cases which hold that the aggravation of injuries by the negligence of a doctor is within the scope of the risk created by the original tortious act. (*Heaton* v. *Kerlan*, 27

[2]Section 447 of the Restatement of Torts provides: "The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if . . . (b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or (c) the intervening act is a normal response to a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."

[3]Section 452 of the Restatement of Torts provides: "Failure of a third person to perform a duty owing to another to protect him from harm threatened by the actor's negligent conduct is not a superseding cause of the other's harm." Comment c states: "The rule stated in this Section applies not only where the third person makes no effort to perform his duty, but also where through his negligence his attempt to do so is unsuccessful."

Cal.2d 716, 720 [166 P.2d 857]; *Ash* v. *Mortensen,* 24 Cal.2d 654, 657 [150 P.2d 876].) The cases of *Stultz* v. *Benson Lumber Co.,* 6 Cal.2d 688 [59 P.2d 100], and *Miner* v. *Mc-Namara,* 82 Conn. 578 [72 A. 138], relied upon by Cox, are distinguishable because there the person whose conduct was held to be a superseding cause was fully aware of the danger involved, and negligent conduct with full realization of the danger may properly be considered highly extraordinary.

The trial court could properly find, as it did, that there was no contributory negligence on the part of plaintiffs. As we have seen, they promptly notified Wahlstrom of the existence of the cracks. Since plaintiffs were not experts on the matters involved here, it cannot properly be held as a matter of law that they should have realized that the loss of water indicated a serious danger. The trier of facts could reasonably determine that plaintiffs were justified in relying on Wahlstrom, the general contractor responsible for construction of the pool, to protect them from injury resulting from the defects. Even if we assume that Wahlstrom was negligent in failing to discover the structural defect and in repairing the damage, its negligence cannot be imputed to plaintiffs. (*Cf. Heaton* v. *Kerlan,* 27 Cal.2d 716, 720 [166 P.2d 857]; *Ash* v. *Mortensen,* 24 Cal.2d 654, 657 [150 P.2d 876].)

On the same day that the court ordered judgment for plaintiffs and directed their attorney to prepare findings, Cox, represented by a different attorney from the one who tried the case, filed a notice of motion to reopen the case on the ground that newly discovered evidence showed that the evidence at the trial was inadequate and misleading. Numerous affidavits and counteraffidavits were filed in support of and in opposition to the motion. The motion was denied. The asserted newly discovered evidence indicated that the pool was located wholly or partially in soft, uncompacted fill and that a city engineer's contour map used at trial, which showed the pool as being entirely in solid earth, was inaccurate. The counteraffidavits averred that the pool was entirely in hard, cut ground and that the pool failed because the gunite was not of sufficient thickness and the steel was not embedded in it. In one of the counteraffidavits the engineer who reconstructed the pool stated that, assuming it had been built on filled or partly filled ground, that condition would not have affected the structural adequacy of the pool if the fill were for a depth of less than three feet or were compacted to 90 per cent.

The conflict between the affidavits and the counter-affidavits was for the trial court to resolve. (*Kataoka* v. *Hanselman,* 150 Cal. 673, 676 [89 P. 1082] ; *cf. Estate of Fraysher,* 47 Cal.2d 131, 135 [301 P.2d 848] ; *Hale* v. *Bohannon,* 38 Cal. 2d 458, 465-466 [241 P.2d 4].) ▬ Moreover, a conflict similar to that shown by the affidavits existed in the evidence presented at trial; for example, the evidence was in conflict as to whether the pool was built in cut ground or in partially filled ground, and, although expert witnesses relied upon the contour map, Cox was put on notice by testimony of a city engineer that the map might be inaccurate. No sufficient showing is made why the additional evidence set forth in the affidavits was not presented at trial. ▬ A motion made after submission to reopen a case for the purpose of introducing further evidence is addressed to the sound discretion of the court (*Virtue* v. *Flynt,* 164 Cal.App.2d 480, 489 [330 P.2d 879] ; *Giomi* v. *Viotti,* 144 Cal.App.2d 714, 718 [301 P.2d 597]), and it is clear that the court did not abuse its discretion in denying the motion here.

▬ At the commencement of the trial it was agreed that the issue of liability and damages should be tried separately. After the court had stated that it would find for the plaintiffs and against Cox on the issue of liability, the parties entered into a stipulation with respect to the amount of damages. About a month after Cox noticed the motion to reopen the case, he moved to be relieved of the stipulation fixing the amount of damages upon the ground that it was entered into by reason of mistake of fact and excusable neglect on the part of Cox and misrepresentations by plaintiffs. The stipulation fixed separate amounts as costs of repairing the damage done to the swimming pool, the house, the patio, and the shrubs and also an amount as damages for loss of use of the house. It was averred in support of the motion that Cox entered into the stipulation because of representations by plaintiffs and their attorneys that the amounts stipulated to were the amounts actually paid by plaintiffs for the repairs or did not exceed the amounts paid, whereas Cox subsequently learned that plaintiffs' application for a building permit showed that the actual costs of repair of the house and the pool were no more than $6,000. It was also averred that by inadvertence of counsel the stipulation was erroneously based on costs of repair as the measure of damages instead of on the difference in the value of the real property before and after the damage.

A counteraffidavit of plaintiffs' attorneys, however, stated

that during the negotiations they told Cox's attorney that only immediately necessary repairs had been made, that they presented to him estimates and bids (not bills) of contractors for all repairs, that the amounts stipulated to were no larger than the lowest estimates for each item, and that the figure of $6,000 contained in the application for the building permit was obviously incorrect. The counteraffidavit also stated that plaintiffs' attorneys then informed Cox's attorney that they had available a witness whose testimony would show that the difference between the value of the property before and after the damage was more than the total cost of repairs stipulated to. Since the trial court was entitled to believe the averments contained in the counteraffidavit, there was no abuse of discretion in denying the request for relief from the stipulation.

The judgment is affirmed.

Traynor, J., Schauer, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.

Appellant's petition for a rehearing was denied June 21, 1961.