[No. B114300. Second Dist., Div. Six. Dec. 14, 1998.]

ALFONSO MARTINEZ et al., Plaintiffs and Appellants, v.
VINTAGE PETROLEUM, INC., Defendant and Respondent.

COUNSEL

Schurmer & Drane, Scott Schurmer and Earl S. Schurmer for Plaintiffs and Appellants.

Tardiff & Associates, Neil S. Tardiff and Lisa Franklin for Defendant and Respondent.

OPINION

YEGAN, J.—In negligence parlance, this is a superseding cause case. Appellant, Alfonso Martinez, was employed by Clark Engineering and Construction Company (Clark), an independent contractor, to work in an oil field operated by Vintage Petroleum, Inc. (Vintage). Appellant was injured when a natural gas pipe burst. He sued Vintage on a negligence theory. Although a jury agreed that Vintage was a substantial factor in causing appellant's harm, it also found that the negligence of appellant's coworkers was a superseding cause that relieved Vintage of liability. Appellant contends there was no superseding cause as a matter of law, that the trial court gave an incorrect jury instruction on the issue and that its special verdict form compounded the error. We affirm.

*Facts*

Vintage operates an oil field near Sea Cliff beach. In 1995, oil pipelines in the field were damaged by landslides. Vintage hired Clark to reroute the oil line by connecting it to an abandoned natural gas line above the slide area. Tying the two lines together required that the natural gas pipeline be cut.

The natural gas pipeline was part of a "gas lift" system that used pressurized natural gas to recover oil from wells. Vintage shut down the "gas lift" system two years before appellant's injury. When the system was shut down, the compressors were turned off and gas was removed from the pipelines for sale. Many lines were "depressurized" as a result of this process. Others were not. Vintage did not maintain a record of which pipes had been depressurized.

Clark's foreman, Lonnie Henderson, was in charge of locating a natural gas line to use for the new oil line and of connecting the two lines together. Henderson had worked in this oil field for about 25 years and was very

familiar with it. He found two conveniently located natural gas pipes for the new oil line. Henderson traced the lines and believed the lines were open, i.e., depressurized, from end to end.

Henderson, appellant and Moe Millikan, a welder employed by another independent contractor, Adobe Welding, went to cut the pipe Henderson had chosen.

Millikan testified as follows: Henderson showed him which pipe to cut, and Millikan used a blowtorch to make a small hole in the pipe. As he did so, gas blew out of the pipe, extinguishing the torch. He told Henderson the pipe had pressure in it and that his torch blew out. Henderson left to check that the valves were open. When he returned, Henderson said he could not "bleed" the line and explained he would use a pipe cutter to "bleed" the pressure by cutting it. As Henderson applied a pipe cutter to the line, gas escaped with an audible hiss. Henderson stood back and watched for a few minutes, attempting to let the pressure subside. It did not. Instead, the pipe burst. A section of it flew into the air striking and severely injuring appellant, who was clearing brush about 25 feet away.

Henderson contradicted Millikan's testimony. According to Henderson, Millikan cut the first hole in the pipe and told Henderson that he had a flame. Henderson understood this to mean that vapor inside the pipe caught fire from Millikan's torch. He believed there might be some residual low pressure inside the pipe and some vapor that might catch fire. Henderson decided to use pipe cutters to avoid starting a fire. Before doing so, he checked nearby valves to make sure the line was open. He also placed his hand near the hole Millikan cut, to see if he could feel any gas escaping. He did not detect any escaping gas.

Henderson testified that he began to cut the pipe and heard a hissing sound almost immediately. He turned to warn Millikan and appellant, but the pipe burst before he could. Henderson denied saying he would use the pipe cutters to "bleed" pressure from the line. He also denied watching the pipe for several minutes after he began to cut it and before it burst. Henderson testified that he would never have cut into the pipe if he had believed it was pressurized.

Henderson, Millikan and three other oil field workers agreed that, if Clark was hired to cut a pipeline, it was Clark's responsibility to make sure the line was depressurized and safe before cutting it.

Appellant called two expert witnesses who opined that the pipe burst because it was carrying pressurized natural gas. Neither expert believed it

physically possible that the explosion was caused by Millikan's welding torch, or some other sort of fire, because the gas escaping from the pipe would have extinguished any flame and because there would not have been enough air inside the pipe to ignite the gas. Appellant's safety expert opined that Vintage was at fault because it should have known the pipe contained pressurized gas and made sure that the pressure was released before anyone cut into the line.

Vintage's expert testified the pipe contained a pocket of gas at low pressure that was ignited by Millikan's welding torch. According to this witness, a high-pressure explosion would not explain the flame Millikan said he saw coming from the pipe or the smoke other witnesses described. Only a fire explosion would create enough force to cause the pipe to whip about and bend the way it did during the incident.

*Instructions*

Vintage requested that the trial court instruct the jury on the issue of superseding cause. Appellant argued the instruction was not supported by the evidence because the harm that occurred—an explosion—was foreseeable, even if the negligence of Henderson and Millikan was not.

The trial court instructed the jury on the issue of superseding cause but it did not give the pattern instruction, BAJI No. 3.79, which provides: "If you find that defendant [(first actor)] was negligent and that such negligence was a substantial factor in bringing about an injury to the plaintiff but that the immediate cause of the injury was the negligent conduct of [a third person] [defendant (second actor)], the defendant [(first actor)] is not relieved of liability for such injury if: [¶] 1. At the time of such conduct defendant [(first actor)] realized or reasonably should have realized that [a third person] [defendant (second actor)] might so act; [or the risk of harm suffered was reasonably foreseeable]; or [¶] 2. A reasonable person knowing the situation existing at the time of the conduct of the [third person] [defendant (second actor)] would not have regarded it as highly extraordinary that the [third person] [defendant (second actor)] had so acted; or [¶] 3. The conduct of the [third person] [defendant (second actor)] was not extraordinarily negligent and was a normal consequence of the situation created by defendant [(first actor)]. [¶] [Extraordinary means unforeseeable, unpredictable, and statistically extremely improbable.]"

Instead of the pattern instruction which is worded in the negative, the trial court gave a modified BAJI No. 3.79 which states the relevant principles in the affirmative: "If you find that defendant VINTAGE PETROLEUM was

negligent and that such negligence was a substantial factor in bringing about an injury to the plaintiff but that the immediate cause of the injury was the negligent conduct of ADOBE WELDING through Moe Millikan and/or CLARK ENGINEERING through Lonnie Henderson, the defendant VINTAGE PETRO-LEUM is relieved of liability for such injury if: [¶] 1. At the time of such conduct defendant VINTAGE PETROLEUM did not realize or reasonably should not have realized that ADOBE WELDING through Moe Millikan and/or CLARK ENGINEERING through Lonnie Henderson might so act; or the risk of harm suffered was not reasonably foreseeable; or [¶] 2. A reasonable person knowing the situation existing at the time of the conduct of ADOBE WELDING through Moe Millikan and/or CLARK ENGINEERING through Lonnie Hender-son would have regarded it as highly extraordinary that ADOBE WELDING through Moe Millikan and/or CLARK ENGINEERING through Lonnie Hender-son had so acted; or [¶] 3. The conduct of ADOBE WELDING through Moe Millikan and/or CLARK ENGINEERING through Lonnie Henderson was ex-traordinarily negligent and was not a normal consequence of the situation created by defendant VINTAGE PETROLEUM. [¶] Extraordinary means unfore-seeable, unpredictable, and statistically extremely improbable."

The jury completed a special verdict form that asked if Vintage was negligent, if its negligence was a cause of appellant's injury, and, if "the manner in which the pipe was cut [was] a foreseeable act as defined by the instructions[.]" Although it concluded that Vintage's negligence was a cause of appellant's injury, the jury also found that the manner in which the pipe was cut was "not a foreseeable act as defined by the instructions." Judgment was entered in favor of Vintage.

### Superseding Cause

▪ Appellant contends the modified BAJI No. 3.79 instruction was not supported by substantial evidence because, even if Henderson's and Milli-kan's conduct was unforeseeable, it caused appellant to suffer a type of injury (being hit by the exploding pipe) that was foreseeable. There can be no rationale rejoinder to this contention because oilfield workers face the danger of explosions every day. This observation, however, does not carry the day for appellant.

Intervening negligence cuts off liability, and becomes known as a super-seding cause, if " 'it is determined that the intervening cause was not foreseeable *and* that the results which it caused were not foreseeable . . . .' " (*Hoyem* v. *Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508,

521 [150 Cal.Rptr. 1, 585 P.2d 851], quoting *Akins* v. *County of Sonoma* (1967) 67 Cal.2d 185, 199 [60 Cal.Rptr. 499, 430 P.2d 57], italics added.)

This rule forms the theoretical underpinning for paragraph 1 of BAJI No. 3.79 (see, *ante*, at p. 699), the general rule for testing whether the intervening act will supersede. Under this test, superseding cause will be found if both the intervening negligent act *and* the result are unforeseeable. Vintage cannot prevail on this test because the result was/is foreseeable. But, there are two other tests, i.e., paragraphs 2 and 3 of BAJI No. 3.79, which may support a finding of superseding cause even if the resulting harm is foreseeable. If any of these three tests is found by the trier of fact, intervening negligence will supersede.

"[T]he fact that an intervening act of a third person is done in a negligent manner does not make it a superseding cause if a reasonable man knowing the situation existing when the act of the third person is done would not regard it as highly extraordinary that the third person so acted . . . ." (*Stewart* v. *Cox* (1961) 55 Cal.2d 857, 864 [13 Cal.Rptr. 521, 362 P.2d 345].) This excerpt from *Stewart*, which relies on the Restatement of Torts section 447, forms the theoretical underpinning for paragraph 2 of BAJI No. 3.79. This test is but another way of saying that foreseeable intervening ordinary negligence will not supersede but such negligence, if "highly extraordinary," will supersede.

"[T]he fact that an intervening act of a third person is done in a negligent manner does not make it a superseding cause if . . . the act is a normal response to a situation created by the defendant's conduct and the manner in which the intervening act is done is not extraordinarily negligent. [Citations]." (55 Cal.2d at p. 864.) This excerpt from *Stewart*, which relies on the Restatement of Torts section 447, forms the theoretical underpinning for paragraph 3 of BAJI No. 3.79. This test is but another way of saying a normal, but negligent, intervening response will not supersede but an extraordinarily negligent response will supersede.

Here the intervening conduct of Henderson and Millikan falls squarely into both rules articulated in *Stewart* v. *Cox, supra*, 55 Cal.2d 857. Every oil field employee testified that cutting into a pressurized natural gas line was not only merely negligent but extraordinarily negligent and dangerous. Under *Stewart*, such extraordinary negligence qualifies as a superseding cause, relieving Vintage of liability. (*Id.,* at p. 864.)

*Claimed .*

*Instructional Error*

██   Appellant contends that, even if a jury instruction on superseding cause was supported by the evidence, the one given by the trial court was incorrect, confusing, and prejudicial. The form instruction on superseding cause, BAJI No. 3.79, lists three circumstances under which a third person's intervening conduct does not relieve a defendant of liability.

The trial court's modified instruction was stated in the affirmative, informing the jury that Vintage would be relieved of liability if the jury found that any of the same three circumstances existed. Appellant argues this change in emphasis was confusing and prejudicial because the modified instruction failed to note that Vintage would not be relieved of liability if the type of harm caused by Millikan and Henderson's negligence was itself foreseeable.

██   "A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence. The trial court may not force the litigant to rely on abstract generalities, but must instruct in specific terms that relate the party's theory to the particular case." (*Soule* v. *General Motors Corp.* (1994) 8 Cal.4th 548, 572 [34 Cal.Rptr.2d 607, 882 P.2d 298].)   ██   There was no error in the instruction given here.

There is no substantive difference between the BAJI instruction and the modified version given by the trial court. Both informed the jury of the circumstances under which intervening unforeseeable extraordinary negligence may constitute a superseding cause. Like BAJI No. 3.79, the trial court's instruction informed the jury that intervening conduct may or may not be a superseding cause depending on the jury's factual deerminations. If anything, the modified instruction given is less confusing and tells the jury the consequence of finding a superseding cause.

*Special Verdict Form*

The special verdict form could have been drafted with more precision. For example, it could have asked three questions paraphrasing the three tests which comprise BAJI No. 3.79. Nevertheless, the special verdict form made

specific reference to foreseeability "as defined by the instructions." (*Ante,* at p. 700.) Thus, it did nothing more than summarize the trial court's correct instruction on that issue.

The judgment is affirmed. Costs to respondent.

Stone (S. J.), P. J., and Gilbert, J., concurred.

Appellants' petition for review by the Supreme Court was denied March 9, 1999. Kennard, J., was of the opinion that the petition should be granted.