Filed 2/22/24  Spizzirri v. Mach-1 Autogroup CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARC SPIZZIRRI et al.,<br><br>    Plaintiffs, Cross-defendants and Appellants,<br><br>        v.<br><br>MACH-1 AUTOGROUP, LLC et al.,<br><br>    Defendants, Cross-complainants and Respondents. | G061814<br><br>(Super. Ct. No. 30-2009-00126504)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Nathan R. Scott, Judge.  Affirmed.

Law Office of Frank W. Battaile and Frank W. Battaile for Plaintiffs, Cross-defendants and Appellants.

Larson, Paul A. Rigali, Dana M. Howard, Tyler J. Franklin and Kimberly E. Wilkinson for Defendants, Cross-complainants and Respondents.

This case comes before us for a second time. In 2008, Marc Spizzirri agreed to sell his Honda dealership in Rancho Santa Margarita to Mach-1 Autogroup.[1] Although Mach-1 took over management of the dealership for a time, the parties never consummated the transaction, and Spizzirri sued Mach-1 and related entities (collectively, Mach-1) for breach of contract and negligence, among other claims. He claimed Mach-1 had mismanaged the dealership and breached the purchase agreement by failing to close the sale. Mach-1 filed a cross-complaint against Spizzirri.[2] It alleged he was required to return deposits received from Mach-1 and had failed to repay a $1 million loan from Mach-1, secured by a promissory note.

A first bench trial ended with rulings that: (1) Spizzirri was required to repay the deposits; (2) Spizzirri had suffered no harm from Mach-1's failure to complete the transaction because he later sold the dealership to another buyer at a higher price; (3) Mach-1 never assumed management of the dealership; and (4) Mach-1 had agreed to cancel Spizzirri's promissory note. In so ruling, the trial court enforced certain provisions from different, contradictory agreements. Spizzirri appealed, and we reversed the judgment and remanded for the court to reconsider the parties' contractual obligations. (*Family Investment Co. v. Mach-1 Autogroup* (Apr. 3, 2015, G047783, G048082) [nonpub. opn.].)

Following a retrial on remand, the trial court again ruled that Spizzirri was required to repay the deposits and had suffered no harm from Mach-1's failure to complete the transaction. It also concluded that although Mach-1 had assumed temporary management of the dealership, Spizzirri had not established any mismanagement during

---

[1]     Spizzirri and another person not relevant here owned the dealership through a company they co-owned. We refer only to Spizzirri for simplicity.

[2]     Mach-1 also named Spizzirri's wife as a defendant. Although she is an appellant in this case, she raises no separate claims, so we again refer only to Spizzirri for simplicity.

that time. As for the $1 million loan, the court concluded Spizzirri was required to repay it.

In this appeal, Spizzirri claims the trial court erred by: (1) denying his motion to dismiss the cross-complaint under Code of Civil Procedure section 583.320, subdivision (a)(3), which provides a deadline for retrial following a remand from an appellate court;[3] (2) including Mach-1's promissory note claim in the retrial, despite Mach-1's failure to appeal from the prior judgment on the merits; (3) granting Mach-1's motion for judgment following his case-in-chief; and (4) denying his motion to reopen his case-in-chief.[4]

As discussed below, we conclude the trial court did not err by denying the motion to dismiss based on Spizzirri's stipulations and applications for continuances. Further, the court properly included Mach-1's promissory note claim in the retrial based on our express reversal of the entire judgment in the prior appeal. The court also did not err by granting the motion for judgment because the evidence permitted it to find that Mach-1 had not mismanaged the dealership and that Spizzirri had suffered no damages due to Mach-1's failure to close. Finally, the court's denial of Spizzirri's motion was not an abuse of discretion. Accordingly, we affirm.

FACTS

I. *The Parties' Unsuccessful Transaction*

In June 2008, Mach-1 agreed to purchase the Family Honda auto dealership from Spizzirri. The agreement set a closing date in August 2008. In October 2008, after Mach-1 failed to close by the original deadline, the parties entered into a new purchase

---

[3] All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

[4] Although Spizzirri also purports to challenge the trial court's denial of his motion for a new trial, he includes no argument independent from his other assertions of error. We therefore do not separately address the court's ruling on the motion for a new trial.

agreement, with a reduced purchase price, and set a closing date in December 2008. Under this agreement, Mach-1 agreed to loan Spizzirri $1 million, memorialized by a promissory note. This amount was to be credited to Mach-1 against the purchase price, but in the event the transaction did not close, Mach-1 was to retain the promissory note. The October 2008 agreement noted that Mach-1 had previously deposited $300,000 into escrow and provided that this sum would be applied to the purchase price. The parties also agreed that Mach-1 would assume the management of the dealership until closing, and Mach-1 did so. Mach-1 again could not close by the deadline.

On January 15, 2009, the parties executed an "Addendum to Agreement for Sale of Automobile Dealership" (the Addendum). By its terms, the Addendum was written to modify a new purchase agreement executed that same day, but no party ever produced the referenced new agreement. Among other things, the Addendum purported to forgive Mach-1's loan to Spizzirri. It also provided that, barring a contingency not relevant here, if the transaction did not close, Mach-1 would lose the amounts already deposited in escrow.

The next day, the parties executed a "Restatement to Agreement for Sale of Automobile Dealership" (the Restatement), purporting to supersede the October 2008 agreement and designating a closing date in February 2009. The Restatement reduced the purchase price to $3.05 million for the dealership's goodwill, plus an amount to be determined through valuation for various tangible assets. It noted the loan to Spizzirri and made no mention of forgiving it. It also provided that if the transaction did not close, Mach-1 would receive its deposits, minus certain costs. Following the Restatement, Mach-1 made another $250,000 deposit.

Despite the multiple extensions and revised terms, the parties still did not close the transaction, and in April 2009, the sale was terminated and Spizzirri resumed management of the dealership. Instead, in November 2009, a third party, RSM Motors,

4

LP, purchased the dealership for about $3.3 million.[5] According to an escrow statement, the price included $944,000 for furniture, fixtures, and equipment.

II. *Spizzirri's Complaint and Mach-1's Cross-complaint*

In July 2009, Spizzirri sued Mach-1, asserting causes of action for breach of contract and negligence, among other claims. Spizzirri alleged that Mach-1 had breached its contractual obligations by failing to close the purchase of the dealership and failing to competently manage it in the interim period. He further alleged that Mach-1's mismanagement constituted negligence. Mach-1 filed a cross-complaint against Spizzirri, alleging, inter alia, that he had breached his contractual obligation to return its deposits and breached the promissory note by failing to repay the loan.

III. *First Trial and Prior Appeal*

In early 2012, the matter proceeded to a bench trial at which the principal dispute was whether the Addendum or the Restatement was the operative agreement between the parties. Following trial, the court (Judge Jamoa A. Moberly) declined to choose a single operative agreement and attempted to read both agreements together. The court concluded that Mach-1 had breached the Restatement by failing to close the transaction but that Spizzirri was not harmed because he later sold the dealership at a higher price. It further concluded that Mach-1 had never assumed management of the dealership. As for the loan, the court concluded that the Addendum had discharged it and thus that Spizzirri owed Mach-1 nothing under the promissory note. Finally, the court ruled that Mach-1 was entitled to repayment of its previously paid deposits, plus interest.

Spizzirri appealed. Mach-1 cross-appealed but challenged only a postjudgment order addressing attorney fees. In 2015, we reversed the judgment and remanded for a new trial. (*Family Investment Co. v. Mach-1 Autogroup, supra*, (Apr. 3, 2015, G047783, G048082).) We concluded the trial court had erred by attempting to

---

[5] Originally, another company, NewSunCo, Ltd., agreed to purchase the dealership, but it later assigned its rights to RSM.

5

read together the Addendum and the Restatement and selecting different provisions to enforce from the two contradictory documents. We noted, inter alia, that "an addendum cannot predate the agreement it was intended to modify." Accordingly, we concluded that the court's ruling on the deposits "and the entire judgment" could not be affirmed. We later reiterated that "the entire judgment must be reversed and the matter remanded for a new trial to sort out the contractual obligations of the two entities."

IV. *Proceedings on Remand*

A. *Spizzirri's Pretrial Motions*

On remand, Spizzirri moved for judgment on the pleadings, seeking to dismiss all claims that did not deal with Mach-1's right to repayment of the deposits. Noting that Mach-1 had not appealed the prior judgment on the merits, he claimed that the deposits were the only matter addressed in the prior appeal and that all other claims were outside the trial court's jurisdiction. The court (Judge Nathan R. Scott) denied the motion, ruling that the issue should instead be treated as a trial management matter. It later ruled that all issues would be retried, citing our prior opinion's unqualified reversal of the first judgment.

Following numerous continuances, the retrial was set for January 2021. In October 2020, Spizzirri moved to dismiss the action because it had not been brought to retrial within the time allowed under section 583.320, subdivision (a)(3). The trial court denied the motion. We discuss the circumstances surrounding Spizzirri's motion to dismiss in greater detail below.

B. *Retrial*

The retrial proceeded in two phases. In the first phase, the trial court determined that the Restatement was the operative agreement between the parties and that Mach-1 was entitled to recover its deposit of $550,000. The matter proceeded to the second phase of trial on all remaining issues.

6

As part of Spizzirri's case-in-chief, he presented evidence that when Mach-1 returned management of the dealership to him, the dealership was about $1.8 million past due on payments to American Honda Finance Corporation (Honda Finance), the financer of its vehicle inventory, which had placed it on a credit hold. It was also hundreds of thousands of dollars behind on rent. Spizzirri made payments from his personal funds to cover the dealership's debts.

Spizzirri also called J. Michael Issa, an expert on the operation of auto dealerships. Issa testified about the severe consequences of the dealership's failure to make timely payments to Honda Finance: "Being [$]1.8 million out of trust is just a huge problem that poses all kinds of legal and financial problems. A dealership on credit hold that can't replace its inventory can't make any money, and you can't earn your way out of the problem." He opined that it would be surprising "to see a good general manager let a dealership get [to that position] because it tends to be a one-way ticket from which it's hard or impossible to return." As for the subsequent sale of the dealership to RSM, Issa calculated the goodwill value under that sale by subtracting the assigned value of furniture, fixtures, and equipment ($944,000) from the purchase price ($3.25 million, according to Issa), resulting in a goodwill value of about $2.3 million.[6] According to Issa, this reflected a loss of $744,000 in the goodwill value of the dealership relative to the October 2008 agreement with Mach-1.

The trial court also received the dealership's financial statements for 2007 and 2008. These statements showed substantial declines in monthly profits from 2007 to 2008, even before Mach-1 began managing the dealership. For instance, the dealership made about $81,000 in profit in January 2007 but only about $18,500 in January 2008. March profits dropped from about $200,000 in 2007 to about $7,000 in 2008. And after a

_____

[6] As noted above, the escrow statement for the RSM transaction reflected a purchase price of about $3.3 million.

profit of over $86,000 in July 2007, the dealership recorded a loss of over $143,000 in July 2008.

## C. *Mach-1's Motion for Judgment and the Trial Court's Tentative Ruling*

After Spizzirri rested his case in the second phase of trial, Mach-1 moved for judgment under section 631.8 as to all his claims.[7] Mach-1 contended that Spizzirri had failed to establish either (1) negligence in its management of the dealership or (2) damages resulting from any breach of contract.

The next day, the trial court announced its tentative ruling granting the motion in its entirety. The court concluded there was no evidence that Mach-1 had mismanaged the dealership. It surveyed the evidence of the dealership's financial circumstances and found that the dealership was "struggling" long before Mach-1 took over. The court noted Spizzirri had not called sales employees to testify about any poor practices by Mach-1. It concluded: "[A]ll I know is that at the same time the recession hit, a failing store . . . started to fail more. I can't attribute that to [Mach-1], and [Spizzirri] ha[s] not shown that I should."

As for the breach of contract claim, the trial court concluded that even if Mach-1 had breached its obligation to close the transaction, Spizzirri had not established any resulting damages. The court stated that Spizzirri subsequently sold the dealership to RSM for more than he had been entitled to under the Restatement. It added: "[Y]ou could go deeper than that. You could look at how much is attributed to goodwill, how much is attributed to furniture, fixtures, and equipment. But if you're going to do a deep analysis, you need to do a really deep analysis. You need to value each deal. I'm not sure the deals have identical terms. [¶] I can tell you that my evidence of the terms of the

---

[7] As discussed further below, section 631.8, subdivision (a), permits a party in a bench trial to move for judgment after the opposing party has completed its presentation of evidence. The court must then weigh the evidence and may render a judgment in favor of the moving party. (*Ibid.*)

8

[RSM] deal are somewhat limited. And so if you're going to . . . try to value the damages by looking at more than the purchase price, you've got to look at the value of all of the terms of both contracts, and that's [Spizzirri's] burden. And it probably takes expert testimony, and I don't have that here." The court further concluded that any other damages Spizzirri sought based on the breach of the Restatement would be "unrecoverable consequential damages."

D. *Spizzirri's Motion to Reopen*

After the trial court announced its tentative ruling, Spizzirri moved to reopen his case-in-chief to provide additional testimony by Issa and other, previously uncalled witnesses. As relevant here, Spizzirri sought to have Issa "walk [the court] through" the analysis that led Issa to conclude the purchase price under the RSM transaction was substantially lower than the total expected compensation under the Restatement.

The trial court denied the motion to reopen. It concluded the motion was untimely because Spizzirri had made it after the court announced its tentative ruling on Mach-1's motion for judgment. The court alternatively concluded that Spizzirri had offered no sufficient explanation for failing to present the contemplated testimony before: "From what I hear, what [Spizzirri] would like to do is to have the expert walk through [the] expert analysis in ways that they could have walked through before but simply chose not to."

E. *The Trial Court's Ruling on the Motion for Judgment and the Second Judgment*

After denying Spizzirri's motion to reopen, the trial court granted Mach-1's motion for judgment. The court reiterated that Spizzirri had failed to establish damages

9

from Mach-1's breach of the Restatement or any mismanagement of the dealership. It also criticized Issa's testimony as containing various contradictions.[8]

The trial resumed, and after hearing Mach-1's case, the trial court concluded that Spizzirri had breached the promissory note. It subsequently issued judgment awarding Spizzirri nothing on his complaint and awarding Mach-1 about $3.4 million for its cross-claims regarding the deposits and the promissory note. Spizzirri timely appealed.

DISCUSSION

Spizzirri claims the trial court erred by: (1) denying his motion to dismiss the cross-complaint based on the time limit in section 583.320; (2) including Mach-1's promissory note claim in the retrial, despite Mach-1's failure to appeal from the prior judgment on the merits; (3) granting Mach-1's motion for judgment; and (4) denying his motion to reopen. As explained below, we conclude the trial court did not err in denying the motion to dismiss based on Spizzirri's stipulations and applications for continuance. The court correctly included Mach-1's promissory note claim in the retrial based on our reversal of the entire judgment. The court did not err in granting the motion for judgment, as the evidence permitted it to find that Mach-1 had not mismanaged the dealership and that Spizzirri had suffered no damages due to any breach of the Restatement by Mach-1. Finally, the denial of Spizzirri's motion to reopen was within the court's discretion.

_____

[8] Spizzirri requested a statement of decision for the trial court's ruling on the motion for judgment, but the court did not issue one. According to Spizzirri, at an "unrelated hearing," the court said it recalled that his counsel had said that no statement of decision would be required, but his counsel claims he has no recollection of making such a statement. As Spizzirri does not assign error to the court's failure to issue a statement of decision, we need not decide whether one was required. In affirming the judgment, we rely on the court's express findings and do not apply the implied findings doctrine.

10

I. *Appellants' Motion to Dismiss the Cross-complaint*

A. *Background*

According to the parties, in June 2015, when this court issued its remittitur in the prior appeal, Spizzirri was in bankruptcy, and the action was subject to an automatic bankruptcy stay. Mach-1 obtained relief from the stay and filed the relevant order in the trial court in November 2015.

In April 2018, the trial court scheduled trial for February 2019, which it later continued to May.[9] The parties then twice stipulated in court to continue the trial: in March, they stipulated to a continuance to September;[10] and in May, they stipulated to continue trial to December 2019.[11]

Spizzirri then twice asked and obtained continuances, without Mach-1's agreement. In November 2019, shortly before trial was to begin, he applied for a 60-day continuance due to his counsel's health problems. The trial court granted his application. In January 2020, Spizzirri again applied for a 60-day continuance, again citing his counsel's health issues. Over Mach-1's objection, the court granted this application and continued trial to June. The court later unilaterally continued the trial twice more, ultimately setting it for January 2021.[12]

In October 2020, Spizzirri filed a motion to dismiss the cross-complaint, contending that section 583.320, subdivision (a)(3), required dismissal because Mach-1

---

[9]     The parties do not discuss, and the record does not show, the reasons for the delay between November 2015 and April 2018.

[10]     The trial court's minute order noted that the continuance was "[p]ursuant to stipulation of the parties."

[11]     The minute order stated that this continuance was "pursuant to the request of counsel."

[12]     Spizzirri raises no argument about these final two continuances by the trial court, and we therefore do not consider them in our analysis.

11

did not bring its cross-claims to trial within three years after this court issued its remittitur and Mach-1 obtained relief from the bankruptcy stay (in November 2015).[13]  He contended the statutory period lapsed in November 2018.  Mach-1 opposed the motion to dismiss, arguing that Spizzirri's stipulations and requests for continuances barred him from seeking dismissal based on the statute.

The trial court denied Spizzirri's motion to dismiss.  Although the court agreed that the statutory period initially lapsed in November 2018, it concluded that the parties' post-lapse agreements to continue trial to September 2019 and later to December revived and extended the statutory period. And according to the court, Spizzirri's subsequent conduct—twice requesting and receiving continuances—estopped him from seeking dismissal under the statute.

B.  *Governing Principles*

Section 583.310 et seq. prescribe the time within which an action must be brought to trial or retrial.  Under these provisions, a plaintiff must generally bring his or her action to trial within five years after commencing it.  (§ 583.310.)  When an appellate court reverses a judgment and remands for a new trial, the plaintiff must bring the action to trial within three years after the filing of the remittitur.  (§ 583.320, subd. (a)(3).)  If the plaintiff does not bring the action to trial or retrial within the prescribed time, the action "shall be dismissed by the court on its own motion or on motion of the defendant, after notice to the parties."  (§ 583.360, subd. (a).)

The statutory scheme allows for the tolling or extension of the trial and retrial periods in different ways.  For one, it allows the parties to extend the period by written stipulation or by "oral agreement made in open court."  (§ 583.330.)  A stipulation that complies with these requirements may revive the applicable period even

---

[13]  As discussed further below, section 583.320, subdivision (a)(3), generally provides that following an appellate remand for a new trial, the plaintiff must bring the action to retrial within three years.

12

after it lapses.  (*Rio Vista Min. Co. v. Superior Court* (1921) 187 Cal. 1, 4, 6 (*Rio Vista*) [parties' written stipulation to new trial date revived statutory trial period, which had already expired]; *Estate of Anastasio* (1989) 215 Cal.App.3d 486, 489 ["The only circumstance that will revive an action after the five-year [trial] period has expired is a stipulation between the parties"]; *Estate of Thatcher* (1953) 120 Cal.App.2d 811, 814 [stipulation to trial date beyond statutory trial period extends that period, "even though such stipulation is made more than five years after the action was filed"]; see also 6 Witkin, Cal. Procedure (6th ed. 2023) Proceedings Without Trial, § 484 ["the statutory extensions, exceptions, and excuses that apply to the 5-year [trial] period . . . expressly apply to the 3-year [retrial] period"].)

Additionally, under appropriate circumstances, the estoppel doctrine may preclude a defendant from seeking dismissal under section 583.360.  (§ 583.140 ["Nothing in this chapter abrogates or otherwise affects the principles of waiver and estoppel"].)  "If a trial court encounters statements or conduct by a defendant which lulls the plaintiff into a false sense of security resulting in inaction, and there is reasonable reliance, estoppel must be available to prevent defendant from profiting from his deception."  (*Borglund v. Bombardier, Ltd.* (1981) 121 Cal.App.3d 276, 281.)

We review the trial court's application of estoppel for abuse of discretion. (*Holder v. Sheet Metal Worker's Internat. Assn.* (1981) 121 Cal.App.3d 321, 323 (*Holder*).)  Legal determinations, such as those involving the interpretation of a statute, are reviewed de novo.  (*Serrano v. Superior Court* (2017) 16 Cal.App.5th 759, 767.)

C. *Analysis*

The trial court did not err by denying Spizzirri's motion to dismiss.  After the statutory period lapsed in November 2018, Spizzirri stipulated in open court to a continuance of trial from May 2019 to September 2019.  He later agreed in open court to

continue the trial to December 2019.[14]  These agreements revived and extended the statutory retrial period.  (§ 583.330; *Rio Vista, supra*, 187 Cal. at pp. 4, 6; *Estate of Anastasio, supra*, 215 Cal.App.3d at p. 489.)  Then, Spizzirri unilaterally asked the court for two more continuances, and the court obliged, continuing the trial first to February 2020 and then to June of that year.  The court reasonably concluded this conduct estopped Spizzirri from seeking dismissal based on Mach-1's delay.  (*Holder, supra*, 121 Cal.App.3d at p. 327 [defendants estopped from seeking dismissal based on delay of retrial because delay resulted from their counsel's request for continuance].)

Citing *Balboa Ins. Co. v. Aguirre* (1983) 149 Cal.App.3d 1002, Spizzirri contends a stipulation cannot revive a statutory retrial period that has already lapsed.  *Balboa* is inapposite because it addressed whether post-expiration conduct could trigger estoppel; it did not discuss stipulations.  (*Id.* at pp. 1008-1009.)  As discussed, a post-expiration stipulation can revive the retrial period.  And because the parties' stipulations here extended the retrial period, Spizzirri's first application for a continuance was within that period, rendering *Balboa* uninstructive on the estoppel issue as well.

Next, Spizzirri cites *Miles v. Speidel* (1989) 211 Cal.App.3d 879, for the proposition that only a written stipulation that expressly references the statutory trial or retrial period can extend that period.  *Miles* does not stand for that proposition.  Indeed, the court there acknowledged that an oral agreement could extend the statutory period and that a stipulation continuing the trial to a date beyond that period was sufficient.  (*Id.* at p. 883.)  The *Miles* court proceeded to examine the stipulation between the parties there and concluded it preserved the defendant's existing right to dismissal because it

---

[14]  Spizzirri contends:  "[T]here was no stipulation or oral agreement.  There was simply a statement that [Spizzirri] accepted the [trial] court's proposed trial date."  But the trial court's minute orders for the relevant hearings stated that there *was* a "stipulation" to continue the trial date to September 2019 and that the trial was continued to December "[p]ursuant to the request of counsel."  Nothing in the record refutes these representations.

14

stated, "'Except for [previously] filed [s]tipulations, no extension, waiver or estoppel . . . exists with regard to Defendant's rights under [the statute].'" (*Id.* at p. 884.) The parties' stipulations here included no such term. Accordingly, the trial court did not err in denying Spizzirri's motion to dismiss.

II. *Retrial of Mach-1's Promissory Note Claim*

The trial court correctly denied Spizzirri's motion for judgment on the pleadings and included Mach-1's promissory note claim in the retrial. "'As a general rule, a judgment becomes final against a nonappealing party even though reversed on the appeal of another party. However such a rule does not apply "where portions of the judgment adverse to a nonappealing party are so interwoven with the whole that appeal from a part affects the other parts; in such a situation, the appellate court can reverse the entire judgment if it is necessary to do justice. [Citations.]" [Citation.] "The test of whether a portion of a judgment appealed from is so interwoven with its other provisions as to preclude an independent examination of the part challenged by the appellant is whether the matters or issues embraced therein are the same as, or interdependent upon, the matters or issues which have not been attacked. [Citations.] '. . . [T]he judgment is severable when the original determination of those issues by the trial court and reflected in the judgment or any determination which could be made as the result of an appeal cannot affect the determination of the remaining issues of the suit . . . .' [Citation.]"'" (*City of Santa Maria v. Cohen* (2017) 11 Cal.App.5th 96, 107.)

Although Mach-1 did not file a cross-appeal on the merits in the first appeal, our prior opinion unequivocally reversed the entire judgment and remanded for a full retrial. (*Family Investment Co. v. Mach-1 Autogroup, supra*, G047783, G048082.) We stated that the trial court's prior ruling on the deposit issue "and the entire judgment" could not be affirmed. To the extent Spizzirri suggests we lacked jurisdiction to reverse the entire judgment because the different issues were not sufficiently interwoven, the law-of-the-case doctrine bars his argument. (*Ponce-Bran v. Trustees of Cal. State*

15

*University* (1996) 48 Cal.App.4th 1656, 1660, fn. 2 ["Under the doctrine of 'law of the case,' a party may not in subsequent appeals relitigate an appellate court's jurisdiction in an earlier appeal for the purpose of attacking the prior rulings as void; this is true whether or not the earlier opinion expressly considered jurisdiction"].)

Moreover, beyond conclusory assertions that the promissory note claim was "readily distinguishable from the claim for the deposit[s]" and "simply ha[d] nothing to do with the resolution of which [asserted contract] applie[d] to the deposit dispute," Spizzirri makes no attempt to show that the claims were independent. He has therefore forfeited his contention. (*Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1 [we need not reach issues presented without argument and will not develop appellants' arguments for them].) Regardless, the argument is frivolous. The Addendum's enforceability potentially controlled the fate of both the deposits and the promissory note, as it purported to forgive the loan and make the deposits nonrefundable. Accordingly, the trial court did not err by retrying the promissory note claim.

III. *Mach-1's Motion for Judgment*

A. *Governing Principles*

Under section 631.8, subdivision (a), a party may move for judgment after an adverse party "has completed his presentation of evidence in a trial by the court." "The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party." (*Ibid.*) "[T]he court may refuse to believe witnesses and draw conclusions at odds with expert opinion. [Citation.]" (*Jordan v. City of Santa Barbara* (1996) 46 Cal.App.4th 1245, 1255.)

We review an order granting a motion for judgment under section 631.8 for substantial evidence. (*Higgins v. Higgins* (2017) 11 Cal.App.5th 648, 658.) "We resolve all evidentiary conflicts in favor of the prevailing parties, and indulge all reasonable inferences possible to uphold the trial court's findings." (*Jordan v. City of Santa Barbara, supra*, at pp. 1254-1255.) Because Spizzirri had the burden of proof at trial, he

16

must establish that the evidence compelled a finding in his favor as a matter of law. (*Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838.) Thus, he must show his evidence was "'"uncontradicted and unimpeached"'" and "'"of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding. "'" (*Ibid.*)

B. *Analysis*

1. *Negligence*

The trial court permissibly found that Spizzirri had not proven his negligence claim. "To prove negligence, a plaintiff must show breach of a legal duty and '"that the breach was a proximate or legal cause of injuries suffered by the plaintiff."' [Citation.] 'Breach is the failure to meet the standard of care.' [Citation.]" (*Webster v. Claremont Yoga* (2018) 26 Cal.App.5th 284, 288.)

Spizzirri contends Mach-1 negligently managed the dealership after it took on management responsibilities. For evidence of breach of Mach-1's duty of care, Spizzirri points to the dealership's failure to pay Honda Finance in a timely manner during the relevant period, which led to the loss of the dealership's credit line. This evidence does not compel a finding of negligence.

Spizzirri has not shown that Mach-1 simply chose not to make timely payments to Honda Finance despite the dealership's ability to satisfy its obligations. Indeed, the evidence showed the dealership was struggling financially and was behind on rent payments as well. As the trial court observed, the dealership had been performing poorly long before Mach-1 assumed its management. The court reasonably concluded the evidence showed only that "at the same time the recession hit, a failing store . . . started to fail more." Spizzirri points to no other evidence establishing that Mach-1 failed to meet the standard of care in managing the dealership. Accordingly, the court was not compelled to conclude that he had proven his claim.

2. *Breach of Contract*

17

The evidence similarly did not compel the trial court to conclude that Spizzirri had established his breach of contract claim. To establish a breach of contract, a plaintiff must prove: "'(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff.' [Citation.]" (*D'Arrigo Bros. of California v. United Farmworkers of America* (2014) 224 Cal.App.4th 790, 800.) "'Contract damages are generally limited to those within the contemplation of the parties when the contract was entered into or at least reasonably foreseeable by them at that time; consequential damages beyond the expectations of the parties are not recoverable.'" (*Behnke v. State Farm General Ins. Co.* (2011) 196 Cal.App.4th 1443, 1468, italics omitted.)

Spizzirri's complaint asserted that Mach-1 had breached its contractual obligations in two ways relevant here: (1) by mismanaging the dealership (specifically, failing to pay the dealership's obligations), and (2) by failing to complete the transaction. As discussed, Spizzirri's evidence did not compel a conclusion that Mach-1 had mismanaged the dealership. As for Mach-1's failure to close, the trial court concluded Spizzirri had failed to prove he had suffered resulting damages. In support, the court cited Spizzirri's subsequent sale of the dealership to RSM for about $3.3 million, more than the $3.05 million price for the dealership's goodwill under the Restatement.

Spizzirri notes that the RSM sale included not only goodwill but also various tangible assets, and that based on the stated valuation for tangible assets, the valuation of goodwill was only about $2.3 million. He claims this shows a decline of $744,000 in the dealership's goodwill value resulting from Mach-1's breach. But the trial court reasonably concluded that Spizzirri cannot separate and compare certain elements of the two transactions without offering a complete analysis of their terms and values. In a complex transaction involving the purchase of an auto dealership, a lower valuation for goodwill alone does not necessarily establish that the seller is worse off. As the court noted, Spizzirri provided limited evidence of the terms of the RSM deal.

18

Spizzirri points to his payments to clear the dealership's various debts after Mach-1 returned its management to him. He asserts, "These damages are recoverable as readily foreseeable and consequential damages resulting from [Mach-1]'s . . . failure to timely close." But the only argument he offers in support of foreseeability pertains to Mach-1's alleged mismanagement of the dealership, rather than to its failure to close: "Mach-1's non-payment of rent and the out of trust situation will certainly and foreseeably lead to Mr. Spizzirri having to pay them. The failure to pay on the flooring line will certainly and foreseeably, and did in fact, lead to a suspension of the dealership's line of credit and a ruinous inability to purchase new cars for sale with an ultimate loss of profits arising from the inability [to] sell cars that the dealership cannot obtain." This argument does not establish that the asserted damages were a foreseeable result of Mach-1's failure to close. The trial court was not compelled to conclude Spizzirri had proven his breach of contract claim. It therefore did not err by granting Mach-1's motion for judgment.

IV. *Spizzirri's Motion to Reopen*

A. *Governing Principles*

"A party may move to reopen its case to offer additional evidence after the court announces its tentative decision in a nonjury trial. So long as no judgment has been entered, the court may allow additional evidence under its inherent power to control the order of proof and the conduct of proceedings. [Citations.]" (Wegner et al., Cal. Practice Guide: Civil Trials & Evidence (The Rutter Group 2023) ¶ 12:400, p. 12-95, citing, e.g., Code Civ. Proc., § 128, subd. (a)(3) & Evid. Code, § 320.) To justify reopening, the proponent must provide a satisfactory explanation for not introducing the evidence previously. (*Stewart v. Cox* (1961) 55 Cal.2d 857, 866 [denying reopening not an abuse of discretion where proponents made "[n]o sufficient showing . . . why the additional evidence . . . was not presented at trial"].)

19

"Trial courts have broad discretion in deciding whether to reopen the evidence. [Citation.] We review a court's denial of a motion to reopen evidence for an abuse of discretion. [Citation.] The appropriate test for abuse of discretion is whether the trial court's decision exceeded the bounds of reason." (*Horning v. Shilberg* (2005) 130 Cal.App.4th 197, 208-209.)

B. *Analysis*

Assuming Spizzirri's motion to reopen was timely, the trial court did not abuse its discretion in denying it. Spizzirri asserts additional testimony by Issa was necessary to clarify matters the court had misunderstood from his original testimony about the reasons for the decline in the value of the dealership's goodwill.[15] But the trial court reasonably concluded that Spizzirri sought "to have the expert walk through [the] expert analysis in ways that they could have walked through before but simply chose not to."

Moreover, even if denial of reopening were an abuse of discretion, it would not have been prejudicial. The claimed clarification Spizzirri sought to offer would not have remedied the flaws in his case that led the trial court to grant Mach-1's motion for judgment. It would not have established that Mach-1's failure to pay Honda Finance was the result of mismanagement rather than difficult financial circumstances. And it would not have shed additional light on the unknown terms of the RSM transaction so as to show it was less favorable than the failed deal with Mach-1. Because the denial of reopening could not have prejudiced Spizzirri, it is no basis for reversal. (*People v. Chun* (2009) 45 Cal.4th 1172, 1201 [reviewing court may not set aside judgment due to trial court absent prejudice].)

---

[15] In his briefs, Spizzirri does not meaningfully argue the trial court erred by denying reopening for presentation of testimony by new witnesses, and he has therefore forfeited any contention in that regard. (*Dills v. Redwoods Associates, Ltd., supra*, 28 Cal.App.4th at p. 890, fn. 1.)

20

DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.


O'LEARY, P. J.

WE CONCUR:


BEDSWORTH, J.


GOODING, J.